IN THE UNITED STATES BANKRUPTCY COUR
IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

IN RE:                                            Case No. 24-16918-KHT
                                                  Chapter 7

Michelle Deon Lee

Debtor.

New American Funding, LLC

Movant,

vs.

Michelle Deon Lee and Tom H. Connolly, Chapter 7 Trustee,

Respondents.

## NOTICE OF MOTION FOR RELIEF FROM STAY
## AND OPPORTUNITY FOR HEARING

### OBJECTION DEADLINE: APRIL 15, 2025

NOTICE IS HEREBY GIVEN that a Motion for Relief from Stay has been filed with the Court, a copy of which is attached hereto.

A hearing on the motion has been set for April 22, 2025, at 9:30 a.m., in Courtroom D, of the U.S. Bankruptcy Court for the District of Colorado located in the U.S. Customs House located at 721 19th Street, Denver, CO 80202. The hearing will be conducted in accordance with the provisions of Local Bankruptcy Rule 4001-1.

PRIOR TO THE HEARING, parties are instructed to check with the Court and the Court's docket to verify if the preliminary hearing will be held in person (in the courtroom) or by telephone. If the preliminary hearing is conducted by telephone, parties scheduled to appear by telephone are responsible for calling the Court to participate in the hearing five (5) minutes prior to the start of the hearing. Parties scheduled to appear shall call the Court at 1-833-568-8864, Meeting Access Code: 160 632 4304. Parties shall file their witness and exhibit lists 24 hours prior to the scheduled hearing.

IF YOU DESIRE TO OPPOSE THIS MOTION, you must file with this Court (in the bankruptcy clerk's office located at 721 19th St., Denver, CO 80202) a WRITTEN OBJECTION to the motion on or before the objection deadline stated above and serve a copy upon Movant's attorney, whose address is listed below.

If you file an objection, you are REQUIRED to comply with Local Bankruptcy Rule 4001-1 regarding hearing procedures, including (1) the timely submission and exchange of witness lists and exhibits and (2) attendance at the above-scheduled hearing in person or through counsel, if represented.

**IF YOU FAIL TO FILE AN OBJECTION**, the scheduled hearing will be **vacated**, and an order granting the relief requested will be granted without further notice to you.

Dated: March 20, 2025

Respectfully Submitted,

Halliday, Watkins & Mann, P.C.

/s/ Heather L. Deere
Heather L. Deere, #28597
Attorney for Movant
355 Union Blvd., Suite 250
Lakewood, CO 80228
303-274-0155
bankruptcyco@hwmlawfirm.com
File No. CO23159

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

IN RE:                                          Case No. 24-16918-KHT
                                                Chapter 7

Michelle Deon Lee

Debtor.

New American Funding, LLC

Movant,

vs.

Michelle Deon Lee and Tom H. Connolly, Chapter 7 Trustee,

Respondents.

## MOTION FOR RELIEF FROM STAY

COMES NOW New American Funding, LLC ("Movant"), by and through its attorney, Heather L. Deere, and hereby requests that the Court terminate/annul the automatic stay of 11 U.S.C. §362(a) as to the real property named in this motion, and as grounds therefore respectfully represents.

1.      The petition initiating this case was filed on November 20, 2024 under Chapter 13 and converted to Chapter 7 as of February 28, 2025.  Movant is a secured creditor and claims a valid lien or security interest in the following described real property (the "Property"):

Lot 10, Block 2, Traditions Subdivision Filing No. 2, County of Arapahoe, State of Colorado.

Purported common address: 25572 East 5th Place, Aurora, CO 80018.

2.      As set forth in the unsworn declaration attached to this Motion and incorporated herein by reference pursuant to Local Bankruptcy Rule 4002-3(c), the Debtor is not in military service.

3.      The Debtor has executed and delivered or is otherwise obligated with respect to that certain promissory note in the original principal amount of $393,250.00 (the "Note").  A copy of the Note is attached hereto and incorporated herein by reference.  Movant is the entity entitled to enforce the Note.

4.      Pursuant to that certain Deed of Trust (the "Deed of Trust"), all obligations (collectively, the "Obligations") under and with respect to the Note and the Deed of Trust are secured by the Property.  A copy of the Deed of Trust is attached hereto and incorporated herein by reference.

5.      All rights and remedies under the Deed of Trust have been assigned to the Movant pursuant to that certain assignment of Deed of Trust, a copy of which is attached hereto and incorporated herein by reference.

6.      In the event the automatic stay in the case is modified, this case dismisses, and/or the Debtors obtain a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Movant.  Movant, directly or through an agent or custodian, has possession of the original Note.  The Note is either made payable to Movant or has been duly endorsed.

7.      As of February 24, 2025, the unpaid principal balance is $392,002.97 and the amount due pursuant to the terms of the Note and Deed of Trust is $433,973.18.

8.      The Note and Deed of Trust require the Debtor to make monthly installment payments.  The following chart sets forth a summary of the number and amounts of payments owed by the Debtor pursuant to the terms of the Note and Deed of Trust as of February 24, 2025:

| Number of Missed Payments | From | To | Monthly Payment Account | Total Missed Payments |
|---|---|---|---|---|
| 7 | 5/1/2024 | 11/1/2024 | $3,787.20 | $26,510.40 |
| 3 | 12/1/2024 | 2/1/2025 | $3,744.96 | $11,234.88 |
| Attorney's Fees | | | | $1,350.00 |
| Filing Fees | | | | $199.00 |
| Less post-petition partial payments: | | | | $0.00 |

Total:        $39,294.28

9.      As required by Local Bankruptcy Rule 4001-1(a)(4)(B), a payment history as evidence of the default in payments is attached hereto and incorporated herein by reference.

10.      The Debtor is in default in the performance of the terms and conditions of said Note and Deed of Trust and, therefore, the amounts stated in this motion are now due and owing to Movant and Movant is lawfully entitled to exercise its state law rights and remedies as to the above-described property.

11.      Enforcement of this security interest has been stayed automatically by operation of 11 U.S.C. §362(a); however, Movant is entitled to relief from such stay for the reasons stated in this Motion.

12.     The fair market value of the Property described in Paragraph 1 is approximately $563,300.00 pursuant to the Debtor's Schedule A/B.

13.     Upon information and belief, the encumbrances on the Property listed in the Schedules or otherwise known, including but not limited to the encumbrances granted to Movant, are:  (i) Movant ($433,973.18).

14.     Movant is entitled to relief from stay under 11 U.S.C. §362(d)(1) for the following reasons:

> a.     Cause exists to grant relief from stay for cause as the Debtor has failed to make monthly installment payments as required by the terms of the Note and Deed of Trust, and the loan is due for the May 1, 2024 payment and all subsequent installment payments (see paragraph 8 above for amount and default breakdown).  The default in payments is substantial enough to indicate the Debtor will be unable to cure the existing default or sustain future payments, and escrow payments have not been made during the default; and
>
> b.     Movant is carrying the burden of the increasing debt due to the lack of payments, and the potential costs of obtaining and liquidating the Property.  Therefore, Movant lacks adequate protection of its collateral.

15.     Movant has incurred its reasonable attorney's fees and costs for its Motion for Relief from Stay pursuant to the terms of the Promissory Note and Deed of Trust.  Movant may add the fees and costs to the loan pursuant to the contractual provisions of the Note and Deed of Trust.  This information is being given to disclose post-petition fees and costs to the Debtors and advise that the fees and costs may be included in any post-petition reinstatement or stipulation to resolve the motion.

16.     In the event no response is filed to this motion, the Movant requests that the court waive the fourteen (14) day stay period pursuant to Rule 4001(a)(3) of the Federal Rule of Bankruptcy Procedure, so that Movant may immediately implement any order granted.

WHEREFORE, Movant, Broker Solutions Inc, dba New American Funding, requests the Court to enter an Order granting Movant, and any loan servicer, relief from stay as to the subject property located at 25572 East 5th Place, Aurora, CO 80018 by annulling and/or terminating the automatic stay pursuant to 11 U.S.C. §362(d) to allow Movant to pursue state law rights and remedies as to the subject property only including but not limited to foreclosure, loss mitigation, short sale or deed in lieu of foreclosure, that this order be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter, and for such other and further relief as this Court may deem just and proper.

Dated: March 20, 2025

Respectfully Submitted,

Halliday, Watkins & Mann, P.C.

/s/ Heather L. Deere

Heather L. Deere, #28597
Attorney for Movant
355 Union Blvd., Suite 250
Lakewood, CO 80228
303-274-0155
bankruptcyco@hwmlawfirm.com
File No. CO23159

# NOTE

**September 12, 2023**
**[Date]**

**Tustin,**
**[City]**

**California**
**[State]**

### 25572 East 5th Place, Aurora, CO 80018
### [Property Address]

## 1.   BORROWER'S PROMISE TO PAY
In return for a loan in the amount of U.S. **$393,250.00**        (the "Principal") that I have received from
**New American Funding, LLC, a Limited Liability Company**

(the "Lender"), I promise to pay the Principal, plus interest, to the order of the Lender. I will make all payments under this Note in U.S. currency in the form of cash, check, money order, or other payment method accepted by Lender.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.   INTEREST
Interest will be charged on unpaid Principal until the full amount of the Principal has been paid. I will pay interest at a yearly rate of **9.250 %.**

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3.   PAYMENTS
### (A) Time and Place of Payments
I will pay principal and interest by making a payment every month. This amount is called my "Monthly Payment."

I will make my Monthly Payment on the **1st**   day of each month beginning on **November 1, 2023.**     I will make these payments every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note. Each Monthly Payment will be applied as of its scheduled due date and will be applied to interest before the Principal. If, on **October 1, 2053,**     I still owe amounts under this Note, I will pay those amounts on that date, which is called the "Maturity Date."

I will make my Monthly Payments at  **P.O.Box 650076**
**Dallas, TX 75265-0076**

or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments
My Monthly Payment will be in the amount of U.S. **$3,235.17.**        This payment amount does not include any property taxes, insurance, or other charges that I may be required to pay each month.

## 4.   BORROWER'S RIGHT TO PREPAY
I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "Prepayment." When I make a Prepayment, I will notify the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the Monthly Payments then due under this Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my Monthly Payment unless the Note Holder agrees in writing to those changes.

**MULTISTATE FIXED RATE NOTE** – Single Family
**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
ICE Mortgage Technology, Inc.                    Page 1 of 3




**LOAN #** ▇▇▇▇▇▇

## 5. LOAN CHARGES

If applicable law sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any Monthly Payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000 %** of my overdue Monthly Payment. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each Monthly Payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of unpaid Principal, all the interest that I owe on that amount, and other charges due under this Note (the "Default Balance"). That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

If I am in default and the Note Holder does not require me to pay the Default Balance immediately as described above, the Note Holder will still have the right to do so if I continue to be in default or if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay the Default Balance immediately as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees and costs.

## 7. GIVING OF NOTICES

### (A) Notice to Borrower

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it, or by mailing it by first class mail, to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address. I will promptly notify the Note Holder of any change to my physical address and of any change to my mailing address. Unless applicable law requires otherwise, notice may instead be sent by e-mail or other electronic communication if agreed to by me and the Note Holder in writing and if I have provided the Note Holder with my current e-mail address or other electronic address. If I have agreed with the Note Holder that notice may be given by e-mail or other electronic communication, I will promptly notify the Note Holder of any changes to my e-mail address or other electronic address.

### (B) Notice to Note Holder

Any notice that I must give to the Note Holder under this Note will be delivered by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**MULTISTATE FIXED RATE NOTE** – Single Family
**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT** ▇▇▇▇▇▇
ICE Mortgage Technology, Inc. Page 2 of 3





**LOAN #** ▮▮▮▮▮▮▮▮

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Mortgage Deed, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument also describes how and under what conditions I may be required to make immediate payment of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, Lender will not exercise this option if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender will give Borrower notice of acceleration. The notice will provide a period of not less than 30 days from the date the notice is given in accordance with Section 16 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to, or upon, the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower and will be entitled to collect all expenses incurred in pursuing such remedies, including, but not limited to: (a) reasonable attorneys' fees and costs; (b) property inspection and valuation fees; and (c) other fees incurred to protect Lender's Interest in the Property and/or rights under this Security Instrument.


WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ **(Seal)**

**MICHELLE DEON LEE**

*[Sign Original Only]*


**Lender: New American Funding, LLC**
**NMLS ID:** ▮▮▮▮▮
**Broker:**
**NMLS ID:** ▮▮▮▮▮
**Loan Originator: Heather Enochs**
**NMLS ID:** ▮▮▮▮▮▮


**MULTISTATE FIXED RATE NOTE** – Single Family
**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT** ▮▮▮▮▮▮▮▮
ICE Mortgage Technology, Inc.                    Page 3 of 3



Lee

## Allonge to Promissory Note

Pay to the order of:

Without Recourse, **New American Funding, LLC**

By: _____

CARLOS ZUNIGA, COLLATERAL/STACK SUPERVISOR

Re:

**Michelle Deon Lee**

**25572 East 5th Place**
**Aurora, CO 80018**

Loan Amount:          **$393,250.00**

Date:                       **09/12/2023**

NAF                                          Page 1 of 1

09/18/2023 09:09 AM
Arapahoe County Clerk, CO
Page: 1 of 18
Joan Lopez, Clerk & Recorder
Electronically Recorded

RF: $98.00   DF: $0.00
E3064027

When recorded, return to:
**First American Mortgage Solutions**
c/o New American Funding Post Closing
1795 International Way
Idaho Falls, ID 83402

Title Order No.
Escrow No.
LOAN #:

——————————————— [Space Above This Line For Recording Data] ————————————

## DEED OF TRUST

| MIN |
| --- |

**MERS PHONE #: 1-888-679-6377**

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined under the caption TRANSFER OF RIGHTS IN THE PROPERTY and in Sections 3, 4, 10, 11, 12, 16, 19, 24, and 25. Certain rules regarding the usage of words used in this document are also provided in Section 17.

**Parties**

(A) "Borrower" is **MICHELLE DEON LEE**

currently residing at **15430 East Fairway Drive, Commerce City, CO 80022.**

Borrower is the trustor under this Security Instrument.
(B) "Lender" is **New American Funding, LLC.**

Lender is a **Limited Liability Company,**                                    organized and existing
under the laws of **Delaware.**                              Lender's address is **14511 Myford Road, Suite 100,**
**Tustin, CA 92780.**
The term "Lender" includes any successors and assigns of Lender.
(C) "Trustee" is the Public Trustee of **Arapahoe**                           County, Colorado. The term
"Trustee" includes any substitute/successor Trustee.
(D) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**Documents**

(E) "Note" means the promissory note dated **September 12, 2023,**            and signed by each Borrower who is legally obligated for the debt under that promissory note, that is in either (i) paper form, using Borrower's written pen and ink

COLORADO – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   (MERS)
ICE Mortgage Technology, Inc.                        Page 1 of 12




**LOAN #:**

signature, or (ii) electronic form, using Borrower's adopted Electronic Signature in accordance with the UETA or E-SIGN, as applicable. The Note evidences the legal obligation of each Borrower who signed the Note to pay Lender
**THREE HUNDRED NINETY THREE THOUSAND TWO HUNDRED FIFTY AND NO/100** * * * * * * * * * * * * * * * * * * * * * *
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * Dollars (U.S. **$393,250.00**            ) plus interest. Each Borrower
who signed the Note has promised to pay this debt in regular monthly payments and to pay the debt in full not later than
**October 1, 2053.**

(F) "Riders" means all Riders to this Security Instrument that are signed by Borrower. All such Riders are incorporated into and deemed to be a part of this Security Instrument. The following Riders are to be signed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider              ☐ Condominium Rider                  ☐ Second Home Rider
☒ 1-4 Family Rider                   ☒ Planned Unit Development Rider      ☐ V.A. Rider
☐ Other(s) [specify]

(G) "Security Instrument" means this document, which is dated **September 12, 2023,** together with all Riders to this document.

## Additional Definitions

(H) "Applicable Law" means all controlling applicable federal, state, and local statutes, regulations, ordinances, and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(I)  "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments, and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association, or similar organization.
(J) "Default" means: (i) the failure to pay any Periodic Payment or any other amount secured by this Security Instrument on the date it is due; (ii) a breach of any representation, warranty, covenant, obligation, or agreement in this Security Instrument; (iii) any materially false, misleading, or inaccurate information or statement to Lender provided by Borrower or any persons or entities acting at Borrower's direction or with Borrower's knowledge or consent, or failure to provide Lender with material information in connection with the Loan, as described in Section 8; or (iv) any action or proceeding described in Section 12(e).
(K) "Electronic Fund Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone or other electronic device capable of communicating with such financial institution, wire transfers, and automated clearinghouse transfers.
(L) "Electronic Signature" means an "Electronic Signature" as defined in the UETA or E-SIGN, as applicable.
(M) "E-SIGN" means the Electronic Signatures in Global and National Commerce Act (15 U.S.C. § 7001 et seq.), as it may be amended from time to time, or any applicable additional or successor legislation that governs the same subject matter.
(N) "Escrow Items" means: (i) taxes and assessments and other items that can attain priority over this Security Instrument as a lien or encumbrance on the Property; (ii) leasehold payments or ground rents on the Property, if any; (iii) premiums for any and all insurance required by Lender under Section 5; (iv) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 11; and (v) Community Association Dues, Fees, and Assessments if Lender requires that they be escrowed beginning at Loan closing or at any time during the Loan term.
(O) "Loan" means the debt obligation evidenced by the Note, plus interest, any prepayment charges, costs, expenses, and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(P) "Loan Servicer" means the entity that has the contractual right to receive Borrower's Periodic Payments and any other payments made by Borrower, and administers the Loan on behalf of Lender. Loan Servicer does not include a sub-servicer, which is an entity that may service the Loan on behalf of the Loan Servicer.
(Q) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(R) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or Default on, the Loan.
(S) "Partial Payment" means any payment by Borrower, other than a voluntary prepayment permitted under the Note, which is less than a full outstanding Periodic Payment.
(T) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3.
(U) "Property" means the property described below under the heading "TRANSFER OF RIGHTS IN THE PROPERTY."
(V) "Rents" means all amounts received by or due Borrower in connection with the lease, use, and/or occupancy of the Property by a party other than Borrower.
(W) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they may be amended from time to time, or any additional or successor federal legislation or regulation that governs the same subject matter. When used in this Security Instrument, "RESPA" refers to all requirements and restrictions that would apply to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

COLORADO – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**   (MERS)
ICE Mortgage Technology, Inc.                     Page 2 of 12

**LOAN #**

(X) "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

(Y) "**UETA**" means the Uniform Electronic Transactions Act, as enacted by the jurisdiction in which the Property is located, as it may be amended from time to time, or any applicable additional or successor legislation that governs the same subject matter.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender (i) the repayment of the Loan, and all renewals, extensions, and modifications of the Note, and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower, in consideration of the debt and the trust herein created, irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the **County** of **Arapahoe:**

**SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS "EXHIBIT A".**
**APN #:**

which currently has the address of **25572 East 5th Place, Aurora** [Street] [City]

**Colorado 80018**          ("Property Address");
          [Zip Code]

TOGETHER WITH all the improvements now or subsequently erected on the property, including replacements and additions to the improvements on such property, all property rights, including, without limitation, all easements, appurtenances, royalties, mineral rights, oil or gas rights or profits, water rights, and fixtures now or subsequently a part of the property. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER REPRESENTS, WARRANTS, COVENANTS, AND AGREES that: (i) Borrower lawfully owns and possesses the Property conveyed in this Security Instrument in fee simple or lawfully has the right to use and occupy the Property under a leasehold estate; (ii) Borrower has the right to grant and convey the Property or Borrower's leasehold interest in the Property; and (iii) the Property is unencumbered, and not subject to any other ownership interest in the Property, except for encumbrances and ownership interests of record. Borrower warrants generally the title to the Property and covenants and agrees to defend the title to the Property against all claims and demands, subject to any encumbrances and ownership interests of record as of Loan closing and liens for taxes for the current year not yet due and payable.

THIS SECURITY INSTRUMENT combines uniform covenants for national use with limited variations and non-uniform covenants that reflect specific Colorado state requirements to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower will pay each Periodic Payment when due. Borrower will also pay any prepayment charges and late charges due under the Note, and any other amounts due under this Security Instrument. Payments due under the Note and this Security Instrument must be made in U.S. currency. If any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check, or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a U.S. federal agency, instrumentality, or entity; or (d) Electronic Fund Transfer.

LOAN #:

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 16. Lender may accept or return any Partial Payments in its sole discretion pursuant to Section 2.

Any offset or claim that Borrower may have now or in the future against Lender will not relieve Borrower from making the full amount of all payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Acceptance and Application of Payments or Proceeds.

(a) Acceptance and Application of Partial Payments. Lender may accept and either apply or hold in suspense Partial Payments in its sole discretion in accordance with this Section 2. Lender is not obligated to accept any Partial Payments or to apply any Partial Payments at the time such payments are accepted, and also is not obligated to pay interest on such unapplied funds. Lender may hold such unapplied funds until Borrower makes payment sufficient to cover a full Periodic Payment, at which time the amount of the full Periodic Payment will be applied to the Loan. If Borrower does not make such a payment within a reasonable period of time, Lender will either apply such funds in accordance with this Section 2 or return them to Borrower. If not applied earlier, Partial Payments will be credited against the total amount due under the Loan in calculating the amount due in connection with any foreclosure proceeding, payoff request, loan modification, or reinstatement. Lender may accept any payment insufficient to bring the Loan current without waiver of any rights under this Security Instrument or prejudice to its rights to refuse such payments in the future.

(b) Order of Application of Partial Payments and Periodic Payments. Except as otherwise described in this Section 2, if Lender applies a payment, such payment will be applied to each Periodic Payment in the order in which it became due, beginning with the oldest outstanding Periodic Payment, as follows: first to interest and then to principal due under the Note, and finally to Escrow Items. If all outstanding Periodic Payments then due are paid in full, any payment amounts remaining may be applied to late charges and to any amounts then due under this Security Instrument. If all sums then due under the Note and this Security Instrument are paid in full, any remaining payment amount may be applied, in Lender's sole discretion, to a future Periodic Payment or to reduce the principal balance of the Note.

If Lender receives a payment from Borrower in the amount of one or more Periodic Payments and the amount of any late charge due for a delinquent Periodic Payment, the payment may be applied to the delinquent payment and the late charge.

When applying payments, Lender will apply such payments in accordance with Applicable Law.

(c) Voluntary Prepayments. Voluntary prepayments will be applied as described in the Note.

(d) No Change to Payment Schedule. Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items.

(a) Escrow Requirement; Escrow Items. Borrower must pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum of money to provide for payment of amounts due for all Escrow Items (the "Funds"). The amount of the Funds required to be paid each month may change during the term of the Loan. Borrower must promptly furnish to Lender all notices or invoices of amounts to be paid under this Section 3.

(b) Payment of Funds; Waiver. Borrower must pay Lender the Funds for Escrow Items unless Lender waives this obligation in writing. Lender may waive this obligation for any Escrow Item at any time. In the event of such waiver, Borrower must pay directly, when and where payable, the amounts due for any Escrow Items subject to the waiver. If Lender has waived the requirement to pay Lender the Funds for any or all Escrow Items, Lender may require Borrower to provide proof of direct payment of those items within such time period as Lender may require. Borrower's obligation to make such timely payments and to provide proof of payment is deemed to be a covenant and agreement of Borrower under this Security Instrument. If Borrower is obligated to pay Escrow Items directly pursuant to a waiver, and Borrower fails to pay timely the amount due for an Escrow Item, Lender may exercise its rights under Section 9 to pay such amount and Borrower will be obligated to repay to Lender any such amount in accordance with Section 9.

Lender may withdraw the waiver as to any or all Escrow Items at any time by giving a notice in accordance with Section 16; upon such withdrawal, Borrower must pay to Lender all Funds for such Escrow Items, and in such amounts, that are then required under this Section 3.

(c) Amount of Funds; Application of Funds. Lender may, at any time, collect and hold Funds in an amount up to, but not in excess of, the maximum amount a lender can require under RESPA. Lender will estimate the amount of Funds due in accordance with Applicable Law.

The Funds will be held in an institution whose deposits are insured by a U.S. federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender will apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender may not charge Borrower for: (i) holding and applying the Funds; (ii) annually analyzing the escrow account; or (iii) verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless Lender and Borrower agree in writing or Applicable Law requires interest to be paid on the Funds, Lender will not be required to pay Borrower any interest or earnings on the Funds. Lender will give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

(d) Surplus; Shortage and Deficiency of Funds. In accordance with RESPA, if there is a surplus of Funds held in escrow, Lender will account to Borrower for such surplus. If Borrower's Periodic Payment is delinquent by more than 30 days, Lender may retain the surplus in the escrow account for the payment of the Escrow Items. If there is a shortage or deficiency of Funds held in escrow, Lender will notify Borrower and Borrower will pay to Lender the amount necessary to make up the shortage or deficiency in accordance with RESPA.

Upon payment in full of all sums secured by this Security Instrument, Lender will promptly refund to Borrower any Funds held by Lender.

COLORADO – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   (MERS)
ICE Mortgage Technology, Inc.                          Page 4 of 12

**LOAN #**

**4. Charges; Liens.** Borrower must pay (a) all taxes, assessments, charges, fines, and impositions attributable to the Property which have priority or may attain priority over this Security Instrument, (b) leasehold payments or ground rents on the Property, if any, and (c) Community Association Dues, Fees, and Assessments, if any. If any of these items are Escrow Items, Borrower will pay them in the manner provided in Section 3.

Borrower must promptly discharge any lien that has priority or may attain priority over this Security Instrument unless Borrower: (aa) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing under such agreement; (bb) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which Lender determines, in its sole discretion, operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (cc) secures from the holder of the lien an agreement satisfactory to Lender that subordinates the lien to this Security Instrument (collectively, the "Required Actions"). If Lender determines that any part of the Property is subject to a lien that has priority or may attain priority over this Security Instrument and Borrower has not taken any of the Required Actions in regard to such lien, Lender may give Borrower a notice identifying the lien. Within 10 days after the date on which that notice is given, Borrower must satisfy the lien or take one or more of the Required Actions.

**5. Property Insurance.**

**(a) Insurance Requirement; Coverages.** Borrower must keep the improvements now existing or subsequently erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes, winds, and floods, for which Lender requires insurance. Borrower must maintain the types of insurance Lender requires in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan, and may exceed any minimum coverage required by Applicable Law. Borrower may choose the insurance carrier providing the insurance, subject to Lender's right to disapprove Borrower's choice, which right will not be exercised unreasonably.

**(b) Failure to Maintain Insurance.** If Lender has a reasonable basis to believe that Borrower has failed to maintain any of the required insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and at Borrower's expense. Unless required by Applicable Law, Lender is under no obligation to advance premiums for, or to seek to reinstate, any prior lapsed coverage obtained by Borrower. Lender is under no obligation to purchase any particular type or amount of coverage and may select the provider of such insurance in its sole discretion. Before purchasing such coverage, Lender will notify Borrower if required to do so under Applicable Law. Any such coverage will insure Lender, but might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard, or liability and might provide greater or lesser coverage than was previously in effect, but not exceeding the coverage required under Section 5(a). Borrower acknowledges that the cost of the insurance coverage so obtained may significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender for costs associated with reinstating Borrower's insurance policy or with placing new insurance under this Section 5 will become additional debt of Bo. ower secured by this Security Instrument. These amounts will bear interest at the Note rate from the date of disbursement and will be payable, with such interest, upon notice from Lender to Borrower requesting payment.

**(c) Insurance Policies.** All insurance policies required by Lender and renewals of such policies: (i) will be subject to Lender's right to disapprove such policies; (ii) must include a standard mortgage clause; and (iii) must name Lender as mortgagee and/or as an additional loss payee. Lender will have the right to hold the policies and renewal certificates. If Lender requires, Borrower will promptly give to Lender proof of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy must include a standard mortgage clause and must name Lender as mortgagee and/or as an additional loss payee.

**(d) Proof of Loss; Application of Proceeds.** In the event of loss, Borrower must give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Any insurance proceeds, whether or not the underlying insurance was required by Lender, will be applied to restoration or repair of the Property, if Lender deems the restoration or repair to be economically feasible and determines that Lender's security will not be lessened by such restoration or repair.

If the Property is to be repaired or restored, Lender will disburse from the insurance proceeds any initial amounts that are necessary to begin the repair or restoration, subject to any restrictions applicable to Lender. During the subsequent repair and restoration period, Lender will have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction (which may include satisfying Lender's minimum eligibility requirements for persons repairing the Property, including, but not limited to, licensing, bond, and insurance requirements) provided that such inspection must be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed, depending on the size of the repair or restoration, the terms of the repair agreement, and whether Borrower is in Default on the Loan. Lender may make such disbursements directly to Borrower, to the person repairing or restoring the Property, or payable jointly to both. Lender will not be required to pay Borrower any interest or earnings on such insurance proceeds unless Lender and Borrower agree in writing or Applicable Law requires otherwise. Fees for public adjusters, or other third parties, retained by Borrower will not be paid out of the insurance proceeds and will be the sole obligation of Borrower.

If Lender deems the restoration or repair not to be economically feasible or Lender's security would be lessened by such restoration or repair, the insurance proceeds will be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds will be applied in the order that Partial Payments are applied in Section 2(b).

LOAN #:

(e) **Insurance Settlements; Assignment of Proceeds.** If Borrower abandons the Property, Lender may file, negotiate, and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 26 or otherwise, Borrower is unconditionally assigning to Lender (i) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note and this Security Instrument, and (ii) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, to the extent that such rights are applicable to the coverage of the Property. If Lender files, negotiates, or settles a claim, Borrower agrees that any insurance proceeds may be made payable directly to Lender without the need to include Borrower as an additional loss payee. Lender may use the insurance proceeds either to repair or restore the Property (as provided in Section 5(d)) or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower must occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and must continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent will not be unreasonably withheld, or unless extenuating circumstances exist that are beyond Borrower's control.

7. **Preservation, Maintenance, and Protection of the Property; Inspections.** Borrower will not destroy, damage, or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower must maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless Lender determines pursuant to Section 5 that repair or restoration is not economically feasible, Borrower will promptly repair the Property if damaged to avoid further deterioration or damage.

If insurance or condemnation proceeds are paid to Lender in connection with damage to, or the taking of, the Property, Borrower will be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed, depending on the size of the repair or restoration, the terms of the repair agreement, and whether Borrower is in Default on the Loan. Lender may make such disbursements directly to Borrower, to the person repairing or restoring the Property, or payable jointly to both. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower remains obligated to complete such repair or restoration.

Lender may make reasonable entries upon and inspections of the Property. If Lender has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender will give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower will be in Default if, during the Loan application process, Borrower or any persons or entities acting at Borrower's direction or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan, including, but not limited to, overstating Borrower's income or assets, understating or failing to provide documentation of Borrower's debt obligations and liabilities, and misrepresenting Borrower's occupancy or intended occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**

(a) **Protection of Lender's Interest.** If: (i) Borrower fails to perform the covenants and agreements contained in this Security Instrument; (ii) there is a legal proceeding or government order that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien that has priority or may attain priority over this Security Instrument, or to enforce laws or regulations); or (iii) Lender reasonably believes that Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and/or rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions may include, but are not limited to: (I) paying any sums secured by a lien that has priority or may attain priority over this Security Instrument; (II) appearing in court; and (III) paying: (A) reasonable attorneys' fees and costs; (B) property inspection and valuation fees; and (C) other fees incurred for the purpose of protecting Lender's interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, exterior and interior inspections of the Property, entering the Property to make repairs, changing locks, replacing or boarding up doors and windows, draining water from pipes, eliminating building or other code violations or dangerous conditions, and having utilities turned on or off. Although Lender may take action under this Section 9, Lender is not required to do so and is not under any duty or obligation to do so. Lender will not be liable for not taking any or all actions authorized under this Section 9.

(b) **Avoiding Foreclosure; Mitigating Losses.** If Borrower is in Default, Lender may work with Borrower to avoid foreclosure and/or mitigate Lender's potential losses, but is not obligated to do so unless required by Applicable Law. Lender may take reasonable actions to evaluate Borrower for available alternatives to foreclosure, including, but not limited to, obtaining credit reports, title reports, title insurance, property valuations, subordination agreements, and third-party approvals. Borrower authorizes and consents to these actions. Any costs associated with such loss mitigation activities may be paid by Lender and recovered from Borrower as described below in Section 9(c), unless prohibited by Applicable Law.

(c) **Additional Amounts Secured.** Any amounts disbursed by Lender under this Section 9 will become additional debt of Borrower secured by this Security Instrument. These amounts may bear interest at the Note rate from the date of disbursement and will be payable, with such interest, upon notice from Lender to Borrower requesting payment.

(d) **Leasehold Terms.** If this Security Instrument is on a leasehold, Borrower will comply with all the provisions of the lease. Borrower will not surrender the leasehold estate and interests conveyed or terminate or cancel the ground

**LOAN #:**

lease. Borrower will not, without the express written consent of the Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title will not merge unless Lender agrees to the merger in writing.

**10. Assignment of Rents.**

(a) **Assignment of Rents.** If the Property is leased to, used by, or occupied by a third party ("Tenant"). Borrower is unconditionally assigning and transferring to Lender any Rents, regardless of to whom the Rents are payable. Borrower authorizes Lender to collect the Rents, and agrees that each Tenant will pay the Rents to Lender. However, Borrower will receive the Rents until (i) Lender has given Borrower notice of Default pursuant to Section 26, and (ii) Lender has given notice to the Tenant that the Rents are to be paid to Lender. This Section 10 constitutes an absolute assignment and not an assignment for additional security only.

(b) **Notice of Default.** If Lender gives notice of Default to Borrower: (i) all Rents received by Borrower must be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender will be entitled to collect and receive all of the Rents; (iii) Borrower agrees to instruct each Tenant that Tenant is to pay all Rents due and unpaid to Lender upon Lender's written demand to the Tenant; (iv) Borrower will ensure that each Tenant pays all Rents due to Lender and will take whatever action is necessary to collect such Rents if not paid to Lender; (v) unless Applicable Law provides otherwise, all Rents collected by Lender will be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, reasonable attorneys' fees and costs, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments, and other charges on the Property, and then to any other sums secured by this Security Instrument; (vi) Lender, or any judicially appointed receiver, will be liable to account for only those Rents actually received; and (vii) Lender will be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

(c) **Funds Paid by Lender.** If the Rents are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents, any funds paid by Lender for such purposes will become indebtedness of Borrower to Lender secured by this Security Instrument pursuant to Section 9.

(d) **Limitation on Collection of Rents.** Borrower may not collect any of the Rents more than one month in advance of the time when the Rents become due, except for security or similar deposits.

(e) **No Other Assignment of Rents.** Borrower represents, warrants, covenants, and agrees that Borrower has not signed any prior assignment of the Rents, will not make any further assignment of the Rents, and has not performed, and will not perform, any act that could prevent Lender from exercising its rights under this Security Instrument.

(f) **Control and Maintenance of the Property.** Unless required by Applicable Law, Lender, or a receiver appointed under Applicable Law, is not obligated to enter upon, take control of, or maintain the Property before or after giving notice of Default to Borrower. However, Lender, or a receiver appointed under Applicable Law, may do so at any time when Borrower is in Default, subject to Applicable Law.

(g) **Additional Provisions.** Any application of the Rents will not cure or waive any Default or invalidate any other right or remedy of Lender. This Section 10 does not relieve Borrower of Borrower's obligations under Section 6.

This Section 10 will terminate when all the sums secured by this Security Instrument are paid in full.

**11. Mortgage Insurance.**

(a) **Payment of Premiums; Substitution of Policy; Loss Reserve; Protection of Lender.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower will pay the premiums required to maintain the Mortgage Insurance in effect. If Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, and (i) the Mortgage Insurance coverage required by Lender ceases for any reason to be available from the mortgage insurer that previously provided such insurance, or (ii) Lender determines in its sole discretion that such mortgage insurer is no longer eligible to provide the Mortgage Insurance coverage required by Lender, Borrower will pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Borrower will continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use, and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve will be non-refundable, even when the Loan is paid in full, and Lender will not be required to pay Borrower any interest or earnings on such loss reserve.

Lender will no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower will pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 11 affects Borrower's obligation to pay interest at the Note rate.

(b) **Mortgage Insurance Agreements.** Mortgage Insurance reimburses Lender for certain losses Lender may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy or coverage.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

**LOAN #:**

As a result of these agreements, Lender, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. Any such agreements will not: (i) affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan; (ii) increase the amount Borrower will owe for Mortgage Insurance; (iii) entitle Borrower to any refund; or (iv) affect the rights Borrower has, if any, with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 (12 U.S.C. § 4901 *et seq.*), as it may be amended from time to time, or any additional or successor federal legislation or regulation that governs the same subject matter ("HPA"). These rights under the HPA may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**12. Assignment and Application of Miscellaneous Proceeds; Forfeiture.**

**(a) Assignment of Miscellaneous Proceeds.** Borrower is unconditionally assigning the right to receive all Miscellaneous Proceeds to Lender and agrees that such amounts will be paid to Lender.

**(b) Application of Miscellaneous Proceeds upon Damage to Property.** If the Property is damaged, any Miscellaneous Proceeds will be applied to restoration or repair of the Property, if Lender deems the restoration or repair to be economically feasible and Lender's security will not be lessened by such restoration or repair. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to ensure the work has been completed to Lender's satisfaction (which may include satisfying Lender's minimum eligibility requirements for persons repairing the Property, including, but not limited to, licensing, bond, and insurance requirements) provided that such inspection must be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed, depending on the size of the repair or restoration, the terms of the repair agreement, and whether Borrower is in Default on the Loan. Lender may make such disbursements directly to Borrower, to the person repairing or restoring the Property, or payable jointly to both. Unless Lender and Borrower agree in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If Lender deems the restoration or repair not to be economically feasible or Lender's security would be lessened by such restoration or repair, the Miscellaneous Proceeds will be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds will be applied in the order that Partial Payments are applied in Section 2(b).

**(c) Application of Miscellaneous Proceeds upon Condemnation, Destruction, or Loss in Value of the Property.** In the event of a total taking, destruction, or loss in value of the Property, all of the Miscellaneous Proceeds will be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property (each, a "Partial Devaluation") where the fair market value of the Property immediately before the Partial Devaluation is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the Partial Devaluation, a percentage of the Miscellaneous Proceeds will be applied to the sums secured by this Security Instrument unless Borrower and Lender otherwise agree in writing. The amount of the Miscellaneous Proceeds that will be so applied is determined by multiplying the total amount of the Miscellaneous Proceeds by a percentage calculated by taking (i) the total amount of the sums secured immediately before the Partial Devaluation, and dividing it by (ii) the fair market value of the Property immediately before the Partial Devaluation. Any balance of the Miscellaneous Proceeds will be paid to Borrower.

In the event of a Partial Devaluation where the fair market value of the Property immediately before the Partial Devaluation is less than the amount of the sums secured immediately before the Partial Devaluation, all of the Miscellaneous Proceeds will be applied to the sums secured by this Security Instrument, whether or not the sums are then due, unless Borrower and Lender otherwise agree in writing.

**(d) Settlement of Claims.** Lender is authorized to collect and apply the Miscellaneous Proceeds either to the sums secured by this Security Instrument, whether or not then due, or to restoration or repair of the Property, if Borrower (i) abandons the Property, or (ii) fails to respond to Lender within 30 days after the date Lender notifies Borrower that the Opposing Party (as defined in the next sentence) offers to settle a claim for damages. "Opposing Party" means the third party that owes Borrower the Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to the Miscellaneous Proceeds.

**(e) Proceeding Affecting Lender's Interest in the Property.** Borrower will be in Default if any action or proceeding begins, whether civil or criminal, that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a Default and, if acceleration has occurred, reinstate as provided in Section 20, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower is unconditionally assigning to Lender the proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property, which proceeds will be paid to Lender. All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order that Partial Payments are applied in Section 2(b).

**13. Borrower Not Released; Forbearance by Lender Not a Waiver.** Borrower or any Successor in Interest of Borrower will not be released from liability under this Security Instrument if Lender extends the time for payment or modifies the amortization of the sums secured by this Security Instrument. Lender will not be required to commence proceedings against any Successor in Interest of Borrower, or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument, by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation,

LOAN #

Lender's acceptance of payments from third persons, entities, or Successors in Interest of Borrower or in amounts less than the amount then due, will not be a waiver of, or preclude the exercise of, any right or remedy by Lender.

**14. Joint and Several Liability; Signatories; Successors and Assigns Bound.** Borrower's obligations and liability under this Security Instrument will be joint and several. However, any Borrower who signs this Security Instrument but does not sign the Note: (a) signs this Security Instrument to mortgage, grant, and convey such Borrower's interest in the Property under the terms of this Security Instrument; (b) signs this Security Instrument to waive any applicable inchoate rights such as dower and curtesy and any available homestead exemptions; (c) signs this Security Instrument to assign any Miscellaneous Proceeds, Rents, or other earnings from the Property to Lender; (d) is not personally obligated to pay the sums due under the Note or this Security Instrument; and (e) agrees that Lender and any other Borrower can agree to extend, modify, forbear, or make any accommodations with regard to the terms of the Note or this Security Instrument without such Borrower's consent and without affecting such Borrower's obligations under this Security Instrument.

Subject to the provisions of Section 19, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, will obtain all of Borrower's rights, obligations, and benefits under this Security Instrument. Borrower will not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing.

**15. Loan Charges.**

**(a) Tax and Flood Determination Fees.** Lender may require Borrower to pay (i) a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan, and (ii) either (A) a one-time charge for flood zone determination, certification, and tracking services, or (B) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur that reasonably might affect such determination or certification. Borrower will also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency, or any successor agency, at any time during the Loan term, in connection with any flood zone determinations.

**(b) Default Charges.** If permitted under Applicable Law, Lender may charge Borrower fees for services performed in connection with Borrower's Default to protect Lender's interest in the Property and rights under this Security Instrument, including: (i) reasonable attorneys' fees and costs; (ii) property inspection, valuation, mediation, and loss mitigation fees; and (iii) other related fees.

**(c) Permissibility of Fees.** In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower should not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

**(d) Savings Clause.** If Applicable Law sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then (i) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit, and (ii) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). To the extent permitted by Applicable Law, Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**16. Notices; Borrower's Physical Address.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing.

**(a) Notices to Borrower.** Unless Applicable Law requires a different method, any written notice to Borrower in connection with this Security Instrument will be deemed to have been given to Borrower when (i) mailed by first class mail, or (ii) actually delivered to Borrower's Notice Address (as defined in Section 16(c) below) if sent by means other than first class mail or Electronic Communication (as defined in Section 16(b) below). Notice to any one Borrower will constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. If any notice to Borrower required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**(b) Electronic Notice to Borrower.** Unless another delivery method is required by Applicable Law, Lender may provide notice to Borrower by e-mail or other electronic communication ("Electronic Communication") if: (i) agreed to by Lender and Borrower in writing; (ii) Borrower has provided Lender with Borrower's e-mail or other electronic address ("Electronic Address"); (iii) Lender provides Borrower with the option to receive notices by first class mail or by other non-Electronic Communication instead of by Electronic Communication; and (iv) Lender otherwise complies with Applicable Law. Any notice to Borrower sent by Electronic Communication in connection with this Security Instrument will be deemed to have been given to Borrower when sent unless Lender becomes aware that such notice is not delivered. If Lender becomes aware that any notice sent by Electronic Communication is not delivered, Lender will resend such communication to Borrower by first class mail or by other non-Electronic Communication. Borrower may withdraw the agreement to receive Electronic Communications from Lender at any time by providing written notice to Lender of Borrower's withdrawal of such agreement.

**(c) Borrower's Notice Address.** The address to which Lender will send Borrower notice ("Notice Address") will be the Property Address unless Borrower has designated a different address by written notice to Lender. If Lender and Borrower have agreed that notice may be given by Electronic Communication, then Borrower may designate an Electronic Address as Notice Address. Borrower will promptly notify Lender of Borrower's change of Notice Address, including any changes to Borrower's Electronic Address if designated as Notice Address. If Lender specifies a procedure for reporting Borrower's change of Notice Address, then Borrower will report a change of Notice Address only through that specified procedure.

LOAN #

(d) **Notices to Lender.** Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated in this Security Instrument unless Lender has designated another address (including an Electronic Address) by notice to Borrower. Any notice in connection with this Security Instrument will be deemed to have been given to Lender only when actually received by Lender at Lender's designated address (which may include an Electronic Address). If any notice to Lender required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

(e) **Borrower's Physical Address.** In addition to the designated Notice Address, Borrower will provide Lender with the address where Borrower physically resides, if different from the Property Address, and notify Lender whenever this address changes.

**17. Governing Law; Severability; Rules of Construction.** This Security Instrument is governed by federal law and the law of the State of Colorado. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. If any provision of this Security Instrument or the Note conflicts with Applicable Law (i) such conflict will not affect other provisions of this Security Instrument or the Note that can be given effect without the conflicting provision, and (ii) such conflicting provision, to the extent possible, will be considered modified to comply with Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence should not be construed as a prohibition against agreement by contract. Any action required under this Security Instrument to be made in accordance with Applicable Law is to be made in accordance with the Applicable Law in effect at the time the action is undertaken.

As used in this Security Instrument: (a) words in the singular will mean and include the plural and vice versa; (b) the word "may" gives sole discretion without any obligation to take any action; (c) any reference to "Section" in this document refers to Sections contained in this Security Instrument unless otherwise noted; and (d) the headings and captions are inserted for convenience of reference and do not define, limit, or describe the scope or intent of this Security Instrument or any particular Section, paragraph, or provision.

**18. Borrower's Copy.** One Borrower will be given one copy of the Note and of this Security Instrument.

**19. Transfer of the Property or a Beneficial Interest in Borrower.** For purposes of this Section 19 only, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract, or escrow agreement, the intent of which is the transfer of title by Borrower to a purchaser at a future date.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, Lender will not exercise this option if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender will give Borrower notice of acceleration. The notice will provide a period of not less than 30 days from the date the notice is given in accordance with Section 16 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to, or upon, the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower and will be entitled to collect all expenses incurred in pursuing such remedies, including, but not limited to: (a) reasonable attorneys' fees and costs; (b) property inspection and valuation fees; and (c) other fees incurred to protect Lender's Interest in the Property and/or rights under this Security Instrument.

**20. Borrower's Right to Reinstate the Loan after Acceleration.** If Borrower meets certain conditions, Borrower will have the right to reinstate the Loan and have enforcement of this Security Instrument discontinued at any time up to the later of (a) five days before any foreclosure sale of the Property, or (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate. This right to reinstate will not apply in the case of acceleration under Section 19.

To reinstate the Loan, Borrower must satisfy all of the following conditions: (aa) pay Lender all sums that then would be due under this Security Instrument and the Note as if no acceleration had occurred; (bb) cure any Default of any other covenants or agreements under this Security Instrument or the Note; (cc) pay all expenses incurred in enforcing this Security Instrument or the Note, including, but not limited to: (i) reasonable attorneys' fees and costs; (ii) property inspection and valuation fees; and (iii) other fees incurred to protect Lender's interest in the Property and/or rights under this Security Instrument or the Note; and (dd) take such action as Lender may reasonably require to assure that Lender's interest in the Property and/or rights under this Security Instrument or the Note, and Borrower's obligation to pay the sums secured by this Security Instrument or the Note, will continue unchanged.

Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (aaa) cash; (bbb) money order; (ccc) certified check, bank check, treasurer's check, or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a U.S. federal agency, instrumentality, or entity; or (ddd) Electronic Fund Transfer. Upon Borrower's reinstatement of the Loan, this Security Instrument and obligations secured by this Security Instrument will remain fully effective as if no acceleration had occurred.

**21. Sale of Note.** The Note or a partial interest in the Note, together with this Security Instrument, may be sold or otherwise transferred one or more times. Upon such a sale or other transfer, all of Lender's rights and obligations under this Security Instrument will convey to Lender's successors and assigns.

**22. Loan Servicer.** Lender may take any action permitted under this Security Instrument through the Loan Servicer or another authorized representative, such as a sub-servicer. Borrower understands that the Loan Servicer or other authorized representative of Lender has the right and authority to take any such action.

The Loan Servicer may change one or more times during the term of the Note. The Loan Servicer may or may not be the holder of the Note. The Loan Servicer has the right and authority to: (a) collect Periodic Payments and any other amounts due under the Note and this Security Instrument; (b) perform any other mortgage loan servicing obligations;

COLORADO – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**  (MERS)
ICE Mortgage Technology, Inc.                          Page 10 of 12

**LOAN #**

and (c) exercise any rights under the Note, this Security Instrument, and Applicable Law on behalf of Lender. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made, and any other information RESPA requires in connection with a notice of transfer of servicing.

**23. Notice of Grievance.** Until Borrower or Lender has notified the other party (in accordance with Section 16) of an alleged breach and afforded the other party a reasonable period after the giving of such notice to take corrective action, neither Borrower nor Lender may commence, join, or be joined to any judicial action (either as an individual litigant or a member of a class) that (a) arises from the other party's actions pursuant to this Security Instrument or the Note, or (b) alleges that the other party has breached any provision of this Security Instrument or the Note. If Applicable Law provides a time period that must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this Section 23. The notice of Default given to Borrower pursuant to Section 26(a) and the notice of acceleration given to Borrower pursuant to Section 19 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 23.

**24. Hazardous Substances.**

(a) **Definitions.** As used in this Section 24: (i) "Environmental Law" means any Applicable Laws where the Property is located that relate to health, safety, or environmental protection; (ii) "Hazardous Substances" include (A) those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law, and (B) the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, corrosive materials or agents, and radioactive materials; (iii) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (iv) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

(b) **Restrictions on Use of Hazardous Substances.** Borrower will not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower will not do, nor allow anyone else to do, anything affecting the Property that: (i) violates Environmental Law; (ii) creates an Environmental Condition; or (iii) due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects or could adversely affect the value of the Property. The preceding two sentences will not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

(c) **Notices; Remedial Actions.** Borrower will promptly give Lender written notice of: (i) any investigation, claim, demand, lawsuit, or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge; (ii) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release, or threat of release of any Hazardous Substance; and (iii) any condition caused by the presence, use, or release of a Hazardous Substance that adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower will promptly take all necessary remedial actions in accordance with Environmental Law. Nothing in this Security Instrument will create any obligation on Lender for an Environmental Cleanup.

**25. Electronic Note Signed with Borrower's Electronic Signature.** If the Note evidencing the debt for this Loan is electronic, Borrower acknowledges and represents to Lender that Borrower: (a) expressly consented and intended to sign the electronic Note using an Electronic Signature adopted by Borrower ("Borrower's Electronic Signature") instead of signing a paper Note with Borrower's written pen and ink signature; (b) did not withdraw Borrower's express consent to sign the electronic Note using Borrower's Electronic Signature; (c) understood that by signing the electronic Note using Borrower's Electronic Signature, Borrower promised to pay the debt evidenced by the electronic Note in accordance with its terms; and (d) signed the electronic Note with Borrower's Electronic Signature with the intent and understanding that by doing so, Borrower promised to pay the debt evidenced by the electronic Note in accordance with its terms.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**26. Acceleration; Remedies.**

(a) **Notice of Default.** Lender will give a notice of Default to Borrower prior to acceleration following Borrower's Default, except that such notice of Default will not be sent when Lender exercises its right under Section 19 unless Applicable Law provides otherwise. The notice will specify, in addition to any other information required by Applicable Law: (i) the Default; (ii) the action required to cure the Default; (iii) a date, not less than 30 days (or as otherwise specified by Applicable Law) from the date the notice is given to Borrower, by which the Default must be cured; (iv) that failure to cure the Default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property; (v) Borrower's right to reinstate after acceleration; and (vi) Borrower's right to deny in the foreclosure proceeding the existence of a Default or to assert any other defense of Borrower to acceleration and sale.

(b) **Acceleration; Power of Sale; Expenses.** If the Default is not cured on or before the date specified in the notice, Lender may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender will be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 26, including, but not limited to: (i) reasonable attorneys' fees and costs; (ii) property inspection and valuation fees; and (iii) other fees incurred to protect Lender's interest in the Property and/or rights under this Security Instrument.

(c) **Notice of Sale; Sale of Property.** If Lender invokes the power of sale, Lender will give written notice to Trustee of the Default and of Lender's election to cause the Property to be sold. Lender will mail a copy of the notice to Borrower as

**LOAN #:**

provided in Section 16. Trustee will record a copy of the notice in the county in which the Property is located. Trustee will publish a notice of sale for the time and in the manner provided by Applicable Law, and will mail copies of the notice of sale in the manner prescribed by Applicable Law to Borrower and to the other required recipients. At a time permitted and in accordance with Applicable Law, Trustee, without further demand on Borrower, will sell the Property at public auction to the highest bidder for cash at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

(d) **Trustee's Deed; Proceeds of Sale.** Trustee will deliver to the purchaser a Trustee's certificate describing the Property and the time the purchaser will be entitled to Trustee's deed. The recitals in the Trustee's deed will be prima facie evidence of the truth of the statements made in that deed. Trustee will apply the proceeds of the sale in the following order: (i) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees and costs; (ii) to all sums secured by this Security Instrument; and (iii) any excess to the person or persons legally entitled to it.

27. **Release.** Upon payment of all sums secured by this Security Instrument, Lender will request that Trustee release this Security Instrument and will produce for Trustee, duly cancelled, all notes evidencing the debt secured by this Security Instrument. Trustee will release this Security Instrument without further inquiry or liability. Borrower will pay any recordation costs and the statutory Trustee's fees associated with such release.

28. **Waiver of Homestead.** Borrower waives all right of homestead exemption in the Property.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider signed by Borrower and recorded with it.

**MICHELLE DEON LEE** (Seal) DATE

**State of COLORADO**
**County of ARAPAHOE**

This record was acknowledged before me on this ___ day of _____ ____(date) by **MICHELLE DEON LEE.**

(Commission Expiration)

(Notary's official signature)

(Title of office)

**MARY HOBMANN**
NOTARY PUBLIC - STATE OF COLORADO
Notary ID
My Commission Expires 6/30/2027

Lender: New American Funding, LLC
NMLS ID:
Broker:
NMLS ID:
Loan Originator: Heather Enochs
NMLS ID:

COLORADO – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT (MERS)
ICE Mortgage Technology, Inc. Page 12 of 12

# Exhibit A – Legal Description

Lot 10, Block 2, Traditions Subdivision Filing No. 2, County of Arapahoe, State of
Colorado.

**LOAN #**

**MIN:**

## 1-4 FAMILY RIDER

THIS 1-4 FAMILY RIDER is made this **12th** day of **September, 2023** and is
incorporated into and amends and supplements the Mortgage, Mortgage Deed, Deed
of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned (the "Borrower") to secure Borrower's Note to **New American Funding,
LLC, a Limited Liability Company**

(the "Lender") of the same date and covering the Property described in the Security
Instrument and located at: **25572 East 5th Place
Aurora, CO 80018**

**1-4 FAMILY COVENANTS.** In addition to the representations, warranties, covenants,
and agreements made in the Security Instrument, Borrower and Lender further covenant
and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.**
In addition to the Property described in the Security Instrument, the following
items now or later attached to the Property, to the extent they are fixtures, are
added to the Property description, and will also constitute the Property covered
by the Security Instrument: building materials, appliances and goods of every
nature whatsoever now or later located in, on, or used, or intended to be used in
connection with the Property, including, but not limited to, those for the purposes
of supplying or distributing heating, cooling, electricity, gas, water, air and light,
fire prevention and extinguishing apparatus, security and access control appa-
ratus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves,
refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows,
storm doors, screens, blinds, shades, curtains and curtain rods, attached mir-
rors, cabinets, paneling, and attached floor coverings, all of which, including
replacements and additions, will be deemed to be and remain a part of the
Property covered by the Security Instrument. All of the foregoing together with
the Property described in the Security Instrument (or the leasehold estate if the
Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider
and the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower will not seek,
agree to, or make a change in the use of the Property or its zoning classification,
unless Lender has agreed in writing to the change. Borrower will comply with
all laws, ordinances, regulations, and requirements of any governmental body
applicable to the Property.

**C. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise
agree in writing, Section 6 concerning Borrower's occupancy of the Property
is deleted.

**D. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Bor-
rower will assign to Lender all leases of the Property and all security deposits
made in connection with leases of the Property. Upon the assignment, Lender will
have the right to modify, extend, or terminate the existing leases and to execute

MULTISTATE 1-4 FAMILY RIDER – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ICE Mortgage Technology, Inc.                Page 1 of 2



**LOAN #:**

new leases, in Lender's sole discretion. As used in this paragraph D the word "lease" will mean "sublease" if the Security Instrument is on a leasehold.

**E. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement related to the Property in which Lender has an interest will be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

MICHELLE DEON LEE

(Seal)
DATE

MULTISTATE 1-4 FAMILY RIDER – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ICE Mortgage Technology, Inc.                    Page 2 of 2



**LOAN #:** ▆▆▆▆▆

**MIN:** ▆▆▆▆▆

## PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **12th**     day of **September, 2023**     and is incorporated into and amends and supplements the Mortgage, Mortgage Deed, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to **New American Funding, LLC, a Limited Liability Company**

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at: **25572 East 5th Place, Aurora, CO 80018.**

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in **COVENANTS, CONDITIONS AND RESTRICTIONS**

(the "Declaration").
The Property is a part of a planned unit development known as **Traditions**

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits, and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the representations, warranties, covenants, and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower will perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the: (i) Declaration; (ii) articles of incorporation, trust instrument, or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower will promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**MULTISTATE PLANNED UNIT DEVELOPMENT RIDER** – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

ICE Mortgage Technology, Inc.            Page 1 of 3            ▆▆▆▆▆



**LOAN #**

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes, winds, and floods, for which Lender requires insurance, then (i) Lender waives the provision in Section 3 for the portion of the Periodic Payment made to Lender consisting of the yearly premium installments for property insurance on the Property, and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower will give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and will be paid to Lender. Lender will apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower will take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and will be paid to Lender. Such proceeds will be applied by Lender to the sums secured by the Security Instrument as provided in Section 12.

**E. Lender's Prior Consent.** Borrower will not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents unless the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F will become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts will bear interest from the date of disbursement at the Note rate and will be payable, with interest, upon notice from Lender to Borrower requesting payment.

MULTISTATE PLANNED UNIT DEVELOPMENT RIDER – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ICE Mortgage Technology, Inc.       Page 2 of 3



**LOAN #:**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____                    _____ (Seal)
**MICHELLE DEON LEE**                                              DATE

MULTISTATE PLANNED UNIT DEVELOPMENT RIDER – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ICE Mortgage Technology, Inc.                    Page 3 of 3



07/18/2024 01:32 PM RF: $13.00 DF: $0.00
Arapahoe County Clerk, CO
Page: 1 of 1
Joan Lopez, Clerk & Recorder
Electronically Recorded

E4045894

**COLORADO**
COUNTY OF **ARAPAHOE**
LOAN NO.

WHEN RECORDED RETURN TO: FIRST AMERICAN MORTGAGE SOLUTIONS, 1795 INTERNATIONAL WAY, IDAHO FALLS, ID 83402

# CORPORATION ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS BENEFICIARY, AS NOMINEE FOR NEW AMERICAN FUNDING, LLC, ITS SUCCESSORS AND ASSIGNS**, located at **P.O. BOX 2026, FLINT, MICHIGAN 48501-2026**, Assignor, does hereby transfer without recourse, representation or warranty, expressed or implied to **WILMINGTON SAVINGS FUNDS SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR ISV TRUST 1A**, located at **500 DELAWARE AVE 11TH FLOOR, WILMINGTON, DE 19801**, Assignee, its successors and assigns, all its rights, title and interest in and to that certain Deed of Trust described below.

Said Deed of Trust dated **SEPTEMBER 12, 2023**, executed by **MICHELLE DEON LEE**, Trustor, to the Public Trustee of the County of **ARAPAHOE**, State of **COLORADO**, Trustee, and recorded on **SEPTEMBER 18, 2023** as Reception No. **E3064027** in the Official Records of the Recorder's Office in and for the County of **ARAPAHOE**, State of **COLORADO**.

## AS DESCRIBED IN SAID DEED OF TRUST

PROPERTY ADDRESS: **25572 EAST 5TH PLACE, AURORA, CO 80018**

IN WITNESS WHEREOF, the undersigned has caused this Instrument to be executed on  7/15/24

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS BENEFICIARY, AS NOMINEE FOR NEW AMERICAN FUNDING, LLC, ITS SUCCESSORS AND ASSIGNS**

ANGIE FAY CHAPMAN, VICE PRESIDENT

STATE OF **SOUTH CAROLINA**   COUNTY OF **GREENVILLE**         ) ss.

On **JUL 1 5 2024**, before me, **Jennifer Korn**, personally appeared **ANGIE FAY CHAPMAN** known to me to be the **VICE PRESIDENT** of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS BENEFICIARY, AS NOMINEE FOR NEW AMERICAN FUNDING, LLC, ITS SUCCESSORS AND ASSIGNS** the corporation that executed the instrument or the person who executed the instrument on behalf of said corporation, and acknowledged to me that such corporation executed the same.

**Jennifer Korn** (COMMISSION EXP. **JUN 1 3 2029**
NOTARY PUBLIC

JENNIFER KORN
MY COMMISSION
EXPIRES
06/13/2029
NOTARY PUBLIC
SOUTH CAROLINA

Page 1 of 1

MERS PHONE: 1-888-679-6377

09/13/2024 02:47 PM          RF: $13.00   DF: $0.00
Arapahoe County Clerk, CO
Page: 1 of 1                                **E4059450**
Joan Lopez, Clerk & Recorder
Electronically Recorded

**Record and Return To:**
Verus Residential Loanco, LLC
2001 M Street NW, Suite 300
Washington, DC 20036

Loan #: **Verus Loan No.** ▓▓▓▓

## ASSIGNMENT OF DEED OF TRUST

For good and valuable consideration, the sufficiency of which is hereby acknowledged, **Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as trustee for ISV Trust 1A , 2001 M Street NW, Suite 300, Washington, DC 20036,** by these presents does convey, assign, transfer and set over to: **New American Funding, LLC, 8201 North FM 620, Ste 120  Austin, TX 78726,** the following described deed of trust, with all interest, all liens, and any rights due or to become due thereon. Said Deed of Trust is recorded in **Arapahoe** County, **CO.**
Original Trustor/Grantor: **Michelle Deon Lee**
Original Beneficiary: **Mortgage Electronic Registration Systems, Inc. (MERS), as beneficiary, as nominee for New American Funding, LLC, its successors and assigns**
Dated: **09/12/2023** Recorded: **09/18/2023** Instrument: **E3064027** in **Arapahoe** County, **CO** Loan Amount: **$393,250.00**
Property Address: **25572 East 5th Place, Aurora, CO 80018**
Parcel Tax ID: ▓▓▓▓▓▓▓▓

**Corporation Assignment of Deed of Trust** Recorded: **07/18/2024** as Instrument Number: **E4045894** Assignor: **Mortgage Electronic Registration Systems, Inc. ("MERS"), as beneficiary, as nominee for New American Funding, LLC, its successors and assigns** Assignee: **Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as trustee for ISV Trust 1A**
Date: **09/12/2024.**

**Verus Residential Loanco, LLC, as attorney-in-fact for Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as trustee for ISV Trust 1A**

By: _Ori Baker_
Name: **Erin Baker**
Title: **Collateral Management Officer**

STATE OF   **Minnesota** ⎰
COUNTY OF  **Hennepin** ⎱  S.S.

This instrument was acknowledged before me, **Erick I. Soto,** a Notary Public, on **09/12/2024** by **Erin Baker** as  **Collateral Management Officer** of **Verus Residential Loanco, LLC, as attorney-in-fact for Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as trustee for ISV Trust 1A.**

Witness my hand and official seal.

_signature_

Notary Public: **Erick I. Soto**
My Commission Expires: **01/31/2028**
Commission #: ▓▓▓▓▓

ERICK I. SOTO
NOTARY PUBLIC
MINNESOTA
My Commission Expires Jan. 31, 2028



Arapahoe County Clerk, CO
Page: 1 of 1
Joan Lopez, Clerk & Recorder
Electronically Recorded

RF: $13.00    DF: $0.00
**E4077559**

## COLORADO

COUNTY OF **ARAPAHOE**

LOAN NO.: 

WHEN RECORDED RETURN TO: **FIRST AMERICAN MORTGAGE SOLUTIONS, 1795 INTERNATIONAL WAY, IDAHO FALLS, ID 83402**

# CORPORATION ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS BENEFICIARY, AS NOMINEE FOR NEW AMERICAN FUNDING, LLC, ITS SUCCESSORS AND ASSIGNS**, located at **P.O. BOX 2026, FLINT, MICHIGAN 48501-2026**, Assignor, does hereby transfer without recourse, representation or warranty, expressed or implied to **NEW AMERICAN FUNDING LLC F/K/A BROKER SOLUTIONS, INC., D/B/A NEW AMERICAN FUNDING**, located at **8201 NORTH FM 620 SUITE 120, AUSTIN, TX 78726**, Assignee, its successors and assigns, all its rights, title and interest in and to that certain Deed of Trust described below.

Said Deed of Trust dated **SEPTEMBER 12, 2023**, executed by **MICHELLE DEON LEE**, Trustor, to the Public Trustee of the County of **ARAPAHOE**, State of **COLORADO**, Trustee, and recorded on **SEPTEMBER 18, 2023** as Reception No. **E3064027** in the Official Records of the Recorder's Office in and for the County of **ARAPAHOE**, State of **COLORADO**.

**AS DESCRIBED IN SAID DEED OF TRUST**

PROPERTY ADDRESS: **25572 EAST 5TH PLACE, AURORA, CO 80018**

IN WITNESS WHEREOF, the undersigned has caused this Instrument to be executed on **NOVEMBER 21, 2024**.

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS BENEFICIARY, AS NOMINEE FOR NEW AMERICAN FUNDING, LLC, ITS SUCCESSORS AND ASSIGNS**

*Candelaria Salmeron*

**CANDELARIA SALMERON, VICE PRESIDENT**

STATE OF **IDAHO**          COUNTY OF **BONNEVILLE**          ) ss.

On **NOVEMBER 21, 2024**, before me, **ADDISON RICE**, personally appeared **CANDELARIA SALMERON** known to me to be the **VICE PRESIDENT** of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS BENEFICIARY, AS NOMINEE FOR NEW AMERICAN FUNDING, LLC, ITS SUCCESSORS AND ASSIGNS** the corporation that executed the instrument or the person who executed the instrument on behalf of said corporation, and acknowledged to me that such corporation executed the same.

**ADDISON RICE (COMMISSION EXP. 06/15/2030)**
NOTARY PUBLIC

ADDISON RICE
Notary Public - State of Idaho
Commission Number
My Commission Expires Jun 15, 2030

MIN:

**MERS PHONE: 1-888-679-6377**

12/02/2024 10:31 AM
Arapahoe County Clerk, CO
Page: 1 of 1
Joan Lopez, Clerk & Recorder
Electronically Recorded
RE: $13.00   DF: $0.00
E4078637



**COLORADO**
COUNTY OF **ARAPAHOE**
LOAN NO.:

WHEN RECORDED RETURN TO: **FIRST AMERICAN MORTGAGE SOLUTIONS, 1795 INTERNATIONAL WAY, IDAHO FALLS, ID 83402**

# *CORRECTIVE CORPORATION ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS BENEFICIARY, AS NOMINEE FOR NEW AMERICAN FUNDING, LLC, ITS SUCCESSORS AND ASSIGNS**, located at **P.O. BOX 2026, FLINT, MICHIGAN 48501-2026**, Assignor, does hereby transfer without recourse, representation or warranty, expressed or implied to **WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR ISV TRUST 1A**, located at **500 DELAWARE AVE 11TH FLOOR, WILMINGTON, DE 19801**, Assignee, its successors and assigns, all its rights, title and interest in and to that certain Deed of Trust described below.

Said Deed of Trust dated **SEPTEMBER 12, 2023**, executed by **MICHELLE DEON LEE**, Trustor, to the Public Trustee of the County of **ARAPAHOE**, State of **COLORADO**, Trustee, and recorded on **SEPTEMBER 18, 2023** as Reception No. **E3064027** in the Official Records of the Recorder's Office in and for the County of **ARAPAHOE**, State of **COLORADO**.

**AS DESCRIBED IN SAID DEED OF TRUST**

PROPERTY ADDRESS: **25572 EAST 5TH PLACE, AURORA, CO 80018**

IN WITNESS WHEREOF, the undersigned has caused this Instrument to be executed on **NOVEMBER 27, 2024**.

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS BENEFICIARY, AS NOMINEE FOR NEW AMERICAN FUNDING, LLC, ITS SUCCESSORS AND ASSIGNS**

**CANDELARIA SALMERON, VICE PRESIDENT**

STATE OF **IDAHO**          COUNTY OF **BONNEVILLE**          ) ss.

On **NOVEMBER 27, 2024**, before me, **ADDISON RICE**, personally appeared **CANDELARIA SALMERON** known to me to be the **VICE PRESIDENT** of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS BENEFICIARY, AS NOMINEE FOR NEW AMERICAN FUNDING, LLC, ITS SUCCESSORS AND ASSIGNS** the corporation that executed the instrument or the person who executed the instrument on behalf of said corporation, and acknowledged to me that such corporation executed the same.

**ADDISON RICE (COMMISSION EXP. 06/15/2030)**
NOTARY PUBLIC

**\*RECORDING TO CORRECT ASSIGNEE NAME ON ASSIGNMENT RECORDED ON 07/18/2024 AS DOCUMENT NO. E4045894**

ADDISON RICE
Notary Public - State of Idaho
Commission Number
My Commission Expires Jun 15, 2030

MIN:

**MERS PHONE: 1-888-679-6377**

## Current History (12/17/2022 - 02/24/2025) - All Transactions Transactions

■ - NEW AMERICAN FUNDING

**Loan Number:** ███████   **Borrower Name:** LEE,MICHELLE DEON

| Transaction Applied Date | 02/05/2025 | 01/16/2025 | 01/16/2025 | 01/16/2025 | 01/10/2025 | 01/10/2025 | 01/09/2025 |
|---|---|---|---|---|---|---|---|
| Segment Number | | | | | | | |
| Due Date | | | | | 05/01/2024 | 01/01/2025 | |
| Transaction Type/Code | 6  31 | 6  31 | 6  31 | 6  31 | 1  61 | 3  51 | 6  31 |
| Amount | $0.00 | $0.00 | $0.00 | $0.00 | $4,418.88 | -$4,418.88 | $0.00 |
| Principal Paid | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Principal Balance | $392,002.97 | $392,002.97 | $392,002.97 | $392,002.97 | $392,002.97 | $392,002.97 | $392,002.97 |
| Interest Paid | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Escrow Paid | $0.00 | $0.00 | $0.00 | $0.00 | $4,418.88 | -$4,418.88 | $0.00 |
| Escrow Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | -$4,418.88 | $0.00 |
| Late Charge Fee Code | | | | | | | |
| Late Charge Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Miscellaneous Paid | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Advance Balance | $5,587.41 | $5,587.41 | $5,587.41 | $5,587.41 | $5,587.41 | $1,168.53 | $1,168.53 |
| Suspense Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Payee Code | SVL001 | SVL001 | SVL001 | SVL001 | | 76023 | SVL001 |
| Restricted Escrow | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| BSC Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| FHA Payment Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Refund Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Replace Reserve | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| HUD Payment | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| HUD Fee Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Reapplied Fee Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Change Owner Fee | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Capitalization Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| DIB/Old Interest Rate | | | | | | | |
| New Interest Rate | | | | | | | |
| Old P & I Amt. | | | | | | | |
| New P & I Amt. | | | | | | | |
| Old Due Date | | | | | | | |
| Unearned Interest Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Unearned Interest Bal. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Credit Life Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Origination Fee Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Effective Date | | | | | | | |
| FS Principal Amt. | | | | | | | |
| FS Interest Amt. | | | | | | | |
| Interest Due Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| IOE/IORE Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Hi Type | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Principal Advance Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

## Current History (12/17/2022 - 02/24/2025) - All Transactions Transactions

### ▇ - NEW AMERICAN FUNDING

**Loan Number:** ▇▇▇▇▇                                    **Borrower Name:** LEE,MICHELLE DEON

| Transaction Applied Date | 02/05/2025 | 01/16/2025 | 01/16/2025 | 01/16/2025 | 01/10/2025 | 01/10/2025 | 01/09/2025 |
|---|---|---|---|---|---|---|---|
| Prin. Bal. Check No. | | | | | | | |
| Previously Posted Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Check Payee Desc. | | | | | | | |
| Held Funds Code | | | | | | | |
| Adv. Effective Date | | | | | | | |
| Batch Code | NI* | NI* | NI* | NI* | | IAL | NI* |
| Sequence No. | 999999 | 999999 | 999999 | 999999 | 999999 | 999999 | 999999 |
| Action | 0000 | 0000 | 0000 | 0000 | 0000 | 0010 | 0000 |
| Service Fee Paid Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Current Deferred Interest YTD | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Deferred Interest Adjust Code | | | | | | | |
| Life Year-to-date Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Current Deferred Interest LTD | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Life Deferred Interest Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Manual Check Code | | | | | | | |
| Disbursement Check No. | WIRE | WIRE | WIRE | WIRE | | WIRE | WIRE |
| From Payee | | | | | | | |
| Refund Description | | | | | | | |
| Sequence Code | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Processor ID | NIV | NIV | NIV | NIV | | | NIV |
| MRec Corp. Adv. Amt. | | $60.00 | | $100.00 | $0.00 | $0.00 | $0.00 |
| MRec Corp. Advance Bal. | $3,807.75 | $3,807.75 | $3,747.75 | $3,747.75 | $3,647.75 | $3,647.75 | $3,647.75 |
| 3rd Party Corp. Adv. Amt. | $75.00 | $0.00 | $35.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3rd Party Corp. Adv. Bal. | $1,606.85 | $1,531.85 | $1,531.85 | $1,496.85 | $1,496.85 | $1,496.85 | $1,496.85 |
| Non-Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $110.00 |
| Non-Rec. Corp. Adv. Bal. | $110.00 | $110.00 | $110.00 | $110.00 | $110.00 | $110.00 | $110.00 |
| Corp. Advance Payee | 90T01 | 90R01 | 90T01 | 90R01 | | | 90N01 |
| Payee | SVL001 | SVL001 | SVL001 | SVL001 | | 76023 | SVL001 |
| Reason Code | VPSN | LOCK | LKBX | WNDH | | | VPRA |
| ELOC Payee 1 | | | | | | | |
| ELOC Payee 2 | | | | | | | |
| Mod. Payment Logic Plan ID | | | | | | | |
| 1098 Adjustment Flag | | | | | | | |
| Consumer Payment Plan | | | | | | | |
| Segment Type | | | | | | | |
| Access Channel/Source | | | | | | | |
| Consumer Promotion ID | | | | | | | |
| Capitalized Interest Paid Amt. | | | | | | | |
| Capitalized Interest Amt. | | | | | | | |
| Principal Forbearance Amt. | | | | | | | |
| Principal Reduction Amt. | | | | | | | |

## Current History (12/17/2022 - 02/24/2025) - All Transactions Transactions

■ - NEW AMERICAN FUNDING

**Loan Number:** ██████████                    **Borrower Name:** LEE,MICHELLE DEON

| Transaction Applied Date | 02/05/2025 | 01/16/2025 | 01/16/2025 | 01/16/2025 | 01/10/2025 | 01/10/2025 | 01/09/2025 |
|---|---|---|---|---|---|---|---|
| Investor Type | | | | | | | |
| 2-To-1 Indicator | | | | | | | |
| Payment Application Ind. | | | | | | | |
| Process Date Sequence No. | 1 | 3 | 2 | 1 | 2 | 1 | 2 |
| Scheduled Payment Amt. Due | | | | | | | |
| Scheduled Payment Amt. Ind. | | | | | | | |
| Source of Funds | | | | | | | |

## Current History (12/17/2022 - 02/24/2025) - All Transactions Transactions

**■ - NEW AMERICAN FUNDING**

**Loan Number:** ████████    **Borrower Name:** LEE,MICHELLE DEON

| Transaction Applied Date | 01/09/2025 | 12/18/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 |
|---|---|---|---|---|---|---|---|
| Segment Number | | | | | | | |
| Due Date | | | | | | | |
| Transaction Type/Code | 6  31 | 6  31 | 6  01 | 6  01 | 6  01 | 6  01 | 6  01 |
| Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Principal Paid | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Principal Balance | $392,002.97 | $392,002.97 | $392,002.97 | $392,002.97 | $392,002.97 | $392,002.97 | $392,002.97 |
| Interest Paid | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Escrow Paid | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Escrow Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Late Charge Fee Code | | | | | | | |
| Late Charge Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Miscellaneous Paid | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Advance Balance | $1,168.53 | $1,168.53 | $1,168.53 | $1,168.53 | $1,168.53 | $1,168.53 | $1,168.53 |
| Suspense Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Payee Code | SVL001 | SVL001 | | | | | |
| Restricted Escrow | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| BSC Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| FHA Payment Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Refund Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Replace Reserve | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| HUD Payment | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| HUD Fee Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Reapplied Fee Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Change Owner Fee | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Capitalization Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| DIB/Old Interest Rate | | | | | | | |
| New Interest Rate | | | | | | | |
| Old P & I Amt. | | | | | | | |
| New P & I Amt. | | | | | | | |
| Old Due Date | | | | | | | |
| Unearned Interest Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Unearned Interest Bal. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Credit Life Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Origination Fee Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Effective Date | | | | | | | |
| FS Principal Amt. | | | | | | | |
| FS Interest Amt. | | | | | | | |
| Interest Due Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| IOE/IORE Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Hi Type | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Principal Advance Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

## Current History (12/17/2022 - 02/24/2025) - All Transactions Transactions

■ - NEW AMERICAN FUNDING

**Loan Number:** ███████    **Borrower Name:** LEE,MICHELLE DEON

| Transaction Applied Date | 01/09/2025 | 12/18/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 |
|---|---|---|---|---|---|---|---|
| Prin. Bal. Check No. | | | | | | | |
| Previously Posted Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Check Payee Desc. | | | | | | | |
| Held Funds Code | | | | | | | |
| Adv. Effective Date | | | | | | | |
| Batch Code | NI* | NI* | 2DH | 2DH | 2DH | 2DH | 2DH |
| Sequence No. | 999999 | 999999 | 999999 | 999999 | 999999 | 999999 | 999999 |
| Action | 0000 | 0000 | 0000 | 0000 | 0000 | 0000 | 0000 |
| Service Fee Paid Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Current Deferred Interest YTD | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Deferred Interest Adjust Code | | | | | | | |
| Life Year-to-date Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Current Deferred Interest LTD | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Life Deferred Interest Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Manual Check Code | | | | | | | |
| Disbursement Check No. | WIRE | WIRE | 835986 | 835986 | 835986 | 835986 | 835986 |
| From Payee | | | | | | | |
| Refund Description | | | | | | | |
| Sequence Code | 0 | 0 | 1 | 1 | 1 | 1 | 1 |
| Processor ID | NIV | NIV | ER4 | ER4 | ER4 | ER4 | ER4 |
| MRec Corp. Adv. Amt. | $66.00 | $30.00 | $45.00 | $240.00 | | | $96.00 |
| MRec Corp. Advance Bal. | $3,647.75 | $3,581.75 | $3,551.75 | $3,506.75 | $3,266.75 | $3,266.75 | $3,266.75 |
| 3rd Party Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $74.00 | $0.10 | $0.00 |
| 3rd Party Corp. Adv. Bal. | $1,496.85 | $1,496.85 | $1,496.85 | $1,496.85 | $1,496.85 | $1,422.85 | $1,422.75 |
| Non-Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Non-Rec. Corp. Adv. Bal. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Corp. Advance Payee | 90R01 | 90R01 | 90R01 | 90R01 | 90T01 | 90T01 | 90R01 |
| Payee | SVL001 | SVL001 | | | | | |
| Reason Code | VPRF | BKIP | OCIF | FCAC | RPTX | INHZ | LWNR |
| ELOC Payee 1 | | | | | | | |
| ELOC Payee 2 | | | | | | | |
| Mod. Payment Logic Plan ID | | | | | | | |
| 1098 Adjustment Flag | | | | | | | |
| Consumer Payment Plan | | | | | | | |
| Segment Type | | | | | | | |
| Access Channel/Source | | | | | | | |
| Consumer Promotion ID | | | | | | | |
| Capitalized Interest Paid Amt. | | | | | | | |
| Capitalized Interest Amt. | | | | | | | |
| Principal Forbearance Amt. | | | | | | | |
| Principal Reduction Amt. | | | | | | | |

## Current History (12/17/2022 - 02/24/2025) - All Transactions Transactions

■ - NEW AMERICAN FUNDING

**Loan Number:** █████████                                          **Borrower Name:** LEE,MICHELLE DEON

| Transaction Applied Date | 01/09/2025 | 12/18/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 |
|---|---|---|---|---|---|---|---|
| **Investor Type** | | | | | | | |
| **2-To-1 Indicator** | | | | | | | |
| **Payment Application Ind.** | | | | | | | |
| **Process Date Sequence No.** | 1 | 1 | 46 | 45 | 44 | 43 | 42 |
| **Scheduled Payment Amt. Due** | | | | | | | |
| **Scheduled Payment Amt. Ind.** | | | | | | | |
| **Source of Funds** | | | | | | | |

## Current History (12/17/2022 - 02/24/2025) - All Transactions Transactions
■ - NEW AMERICAN FUNDING

**Loan Number:** ████████        **Borrower Name:** LEE,MICHELLE DEON

| Transaction Applied Date | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 |
|---|---|---|---|---|---|---|---|
| Segment Number | | | | | | | |
| Due Date | | | | | | | |
| Transaction Type/Code | 6  01 | 6  01 | 6  01 | 6  01 | 6  01 | 6  01 | 6  01 |
| Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Principal Paid | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Principal Balance | $392,002.97 | $392,002.97 | $392,002.97 | $392,002.97 | $392,002.97 | $392,002.97 | $392,002.97 |
| Interest Paid | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Escrow Paid | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Escrow Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Late Charge Fee Code | | | | | | | |
| Late Charge Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Miscellaneous Paid | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Advance Balance | $1,168.53 | $1,168.53 | $1,168.53 | $1,168.53 | $1,168.53 | $1,168.53 | $1,168.53 |
| Suspense Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Payee Code | | | | | | | |
| Restricted Escrow | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| BSC Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| FHA Payment Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Refund Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Replace Reserve | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| HUD Payment | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| HUD Fee Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Reapplied Fee Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Change Owner Fee | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Capitalization Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| DIB/Old Interest Rate | | | | | | | |
| New Interest Rate | | | | | | | |
| Old P & I Amt. | | | | | | | |
| New P & I Amt. | | | | | | | |
| Old Due Date | | | | | | | |
| Unearned Interest Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Unearned Interest Bal. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Credit Life Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Origination Fee Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Effective Date | | | | | | | |
| FS Principal Amt. | | | | | | | |
| FS Interest Amt. | | | | | | | |
| Interest Due Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| IOE/IORE Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Hi Type | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Principal Advance Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

## Current History (12/17/2022 - 02/24/2025) - All Transactions Transactions

**■ - NEW AMERICAN FUNDING**

**Loan Number:** ▮▮▮▮▮▮  **Borrower Name:** LEE,MICHELLE DEON

| Transaction Applied Date | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 |
|---|---|---|---|---|---|---|---|
| Prin. Bal. Check No. | | | | | | | |
| Previously Posted Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Check Payee Desc. | | | | | | | |
| Held Funds Code | | | | | | | |
| Adv. Effective Date | | | | | | | |
| Batch Code | 2DH | 2DH | 2DH | 2DH | 2DH | 2DH | 2DH |
| Sequence No. | 999999 | 999999 | 999999 | 999999 | 999999 | 999999 | 999999 |
| Action | 0000 | 0000 | 0000 | 0000 | 0000 | 0000 | 0000 |
| Service Fee Paid Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Current Deferred Interest YTD | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Deferred Interest Adjust Code | | | | | | | |
| Life Year-to-date Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Current Deferred Interest LTD | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Life Deferred Interest Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Manual Check Code | | | | | | | |
| Disbursement Check No. | 835986 | 835986 | 835986 | 835986 | 835986 | 835986 | 835986 |
| From Payee | | | | | | | |
| Refund Description | | | | | | | |
| Sequence Code | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Processor ID | ER4 | ER4 | ER4 | ER4 | ER4 | ER4 | ER4 |
| MRec Corp. Adv. Amt. | $240.00 | | | $8.73 | $250.00 | | |
| MRec Corp. Advance Bal. | $3,170.75 | $2,930.75 | $2,930.75 | $2,930.75 | $2,922.02 | $2,672.02 | $2,672.02 |
| 3rd Party Corp. Adv. Amt. | $0.00 | $0.05 | $0.10 | $0.00 | $0.00 | $0.10 | $6.00 |
| 3rd Party Corp. Adv. Bal. | $1,422.75 | $1,422.75 | $1,422.70 | $1,422.60 | $1,422.60 | $1,422.60 | $1,422.50 |
| Non-Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Non-Rec. Corp. Adv. Bal. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Corp. Advance Payee | 90R01 | 90T01 | 90T01 | 90R01 | 90R01 | 90T01 | 90T01 |
| Payee | | | | | | | |
| Reason Code | FCAC | INHZ | INHZ | MAIL | FCAC | INHZ | INFL |
| ELOC Payee 1 | | | | | | | |
| ELOC Payee 2 | | | | | | | |
| Mod. Payment Logic Plan ID | | | | | | | |
| 1098 Adjustment Flag | | | | | | | |
| Consumer Payment Plan | | | | | | | |
| Segment Type | | | | | | | |
| Access Channel/Source | | | | | | | |
| Consumer Promotion ID | | | | | | | |
| Capitalized Interest Paid Amt. | | | | | | | |
| Capitalized Interest Amt. | | | | | | | |
| Principal Forbearance Amt. | | | | | | | |
| Principal Reduction Amt. | | | | | | | |

## Current History (12/17/2022 - 02/24/2025) - All Transactions Transactions

■ - NEW AMERICAN FUNDING

**Loan Number:** ███████████                    **Borrower Name:** LEE,MICHELLE DEON

| Transaction Applied Date | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 |
|---|---|---|---|---|---|---|---|
| **Investor Type** | | | | | | | |
| **2-To-1 Indicator** | | | | | | | |
| **Payment Application Ind.** | | | | | | | |
| **Process Date Sequence No.** | 41 | 40 | 39 | 38 | 37 | 36 | 35 |
| **Scheduled Payment Amt. Due** | | | | | | | |
| **Scheduled Payment Amt. Ind.** | | | | | | | |
| **Source of Funds** | | | | | | | |

## Current History (12/17/2022 - 02/24/2025) - All Transactions Transactions

**■** - NEW AMERICAN FUNDING

**Loan Number:** ██████████                                    **Borrower Name:** LEE,MICHELLE DEON

| Transaction Applied Date | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 |
|---|---|---|---|---|---|---|---|
| Segment Number | | | | | | | |
| Due Date | | | | | | | |
| Transaction Type/Code | 6  01 | 6  01 | 6  01 | 6  01 | 6  01 | 6  01 | 6  01 |
| Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Principal Paid | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Principal Balance | $392,002.97 | $392,002.97 | $392,002.97 | $392,002.97 | $392,002.97 | $392,002.97 | $392,002.97 |
| Interest Paid | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Escrow Paid | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Escrow Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Late Charge Fee Code | | | | | | | |
| Late Charge Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Miscellaneous Paid | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Advance Balance | $1,168.53 | $1,168.53 | $1,168.53 | $1,168.53 | $1,168.53 | $1,168.53 | $1,168.53 |
| Suspense Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Payee Code | | | | | | | |
| Restricted Escrow | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| BSC Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| FHA Payment Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Refund Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Replace Reserve | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| HUD Payment | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| HUD Fee Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Reapplied Fee Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Change Owner Fee | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Capitalization Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| DIB/Old Interest Rate | | | | | | | |
| New Interest Rate | | | | | | | |
| Old P & I Amt. | | | | | | | |
| New P & I Amt. | | | | | | | |
| Old Due Date | | | | | | | |
| Unearned Interest Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Unearned Interest Bal. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Credit Life Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Origination Fee Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Effective Date | | | | | | | |
| FS Principal Amt. | | | | | | | |
| FS Interest Amt. | | | | | | | |
| Interest Due Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| IOE/IORE Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Hi Type | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Principal Advance Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

## Current History (12/17/2022 - 02/24/2025) - All Transactions Transactions

▮ - NEW AMERICAN FUNDING

**Loan Number:** ▮                                      **Borrower Name:** LEE,MICHELLE DEON

| Transaction Applied Date | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 |
|---|---|---|---|---|---|---|---|
| Prin. Bal. Check No. | | | | | | | |
| Previously Posted Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Check Payee Desc. | | | | | | | |
| Held Funds Code | | | | | | | |
| Adv. Effective Date | | | | | | | |
| Batch Code | 2DH | 2DH | 2DH | 2DH | 2DH | 2DH | 2DH |
| Sequence No. | 999999 | 999999 | 999999 | 999999 | 999999 | 999999 | 999999 |
| Action | 0000 | 0000 | 0000 | 0000 | 0000 | 0000 | 0000 |
| Service Fee Paid Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Current Deferred Interest YTD | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Deferred Interest Adjust Code | | | | | | | |
| Life Year-to-date Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Current Deferred Interest LTD | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Life Deferred Interest Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Manual Check Code | | | | | | | |
| Disbursement Check No. | 835986 | 835986 | 835986 | 835986 | 835986 | 835986 | 835986 |
| From Payee | | | | | | | |
| Refund Description | | | | | | | |
| Sequence Code | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Processor ID | ER4 | ER4 | ER4 | ER4 | ER4 | ER4 | ER4 |
| MRec Corp. Adv. Amt. | $120.00 | $11.52 | $1,000.00 | | | $50.00 | $105.00 |
| MRec Corp. Advance Bal. | $2,672.02 | $2,552.02 | $2,540.50 | $1,540.50 | $1,540.50 | $1,540.50 | $1,490.50 |
| 3rd Party Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.10 | $55.00 | $0.00 | $0.00 |
| 3rd Party Corp. Adv. Bal. | $1,416.50 | $1,416.50 | $1,416.50 | $1,416.50 | $1,416.40 | $1,361.40 | $1,361.40 |
| Non-Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Non-Rec. Corp. Adv. Bal. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Corp. Advance Payee | 90R01 | 90R01 | 90R01 | 90T01 | 90T01 | 90R01 | 90R01 |
| Payee | | | | | | | |
| Reason Code | WINT | MAIL | RPAT | INHZ | FTOF | RPSC | RPBP |
| ELOC Payee 1 | | | | | | | |
| ELOC Payee 2 | | | | | | | |
| Mod. Payment Logic Plan ID | | | | | | | |
| 1098 Adjustment Flag | | | | | | | |
| Consumer Payment Plan | | | | | | | |
| Segment Type | | | | | | | |
| Access Channel/Source | | | | | | | |
| Consumer Promotion ID | | | | | | | |
| Capitalized Interest Paid Amt. | | | | | | | |
| Capitalized Interest Amt. | | | | | | | |
| Principal Forbearance Amt. | | | | | | | |
| Principal Reduction Amt. | | | | | | | |

## Current History (12/17/2022 - 02/24/2025) - All Transactions Transactions

■ - NEW AMERICAN FUNDING

**Loan Number:** ███████                                          **Borrower Name:** LEE,MICHELLE DEON

| Transaction Applied Date | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 |
|---|---|---|---|---|---|---|---|
| **Investor Type** | | | | | | | |
| **2-To-1 Indicator** | | | | | | | |
| **Payment Application Ind.** | | | | | | | |
| **Process Date Sequence No.** | 34 | 33 | 32 | 31 | 30 | 29 | 28 |
| **Scheduled Payment Amt. Due** | | | | | | | |
| **Scheduled Payment Amt. Ind.** | | | | | | | |
| **Source of Funds** | | | | | | | |

## Current History (12/17/2022 - 02/24/2025) - All Transactions Transactions

■ - NEW AMERICAN FUNDING

**Loan Number:** ███████              **Borrower Name:** LEE,MICHELLE DEON

| Transaction Applied Date | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 |
|---|---|---|---|---|---|---|---|
| Segment Number | | | | | | | |
| Due Date | | | | | | | |
| Transaction Type/Code | 6  01 | 6  01 | 6  01 | 6  01 | 6  01 | 6  01 | 6  01 |
| Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Principal Paid | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Principal Balance | $392,002.97 | $392,002.97 | $392,002.97 | $392,002.97 | $392,002.97 | $392,002.97 | $392,002.97 |
| Interest Paid | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Escrow Paid | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Escrow Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Late Charge Fee Code | | | | | | | |
| Late Charge Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Miscellaneous Paid | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Advance Balance | $1,168.53 | $1,168.53 | $1,168.53 | $1,168.53 | $1,168.53 | $1,168.53 | $1,168.53 |
| Suspense Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Payee Code | | | | | | | |
| Restricted Escrow | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| BSC Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| FHA Payment Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Refund Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Replace Reserve | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| HUD Payment | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| HUD Fee Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Reapplied Fee Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Change Owner Fee | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Capitalization Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| DIB/Old Interest Rate | | | | | | | |
| New Interest Rate | | | | | | | |
| Old P & I Amt. | | | | | | | |
| New P & I Amt. | | | | | | | |
| Old Due Date | | | | | | | |
| Unearned Interest Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Unearned Interest Bal. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Credit Life Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Origination Fee Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Effective Date | | | | | | | |
| FS Principal Amt. | | | | | | | |
| FS Interest Amt. | | | | | | | |
| Interest Due Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| IOE/IORE Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Hi Type | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Principal Advance Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

## Current History (12/17/2022 - 02/24/2025) - All Transactions Transactions

■ - NEW AMERICAN FUNDING

**Loan Number:** ███████████   **Borrower Name:** LEE,MICHELLE DEON

| Transaction Applied Date | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 |
|---|---|---|---|---|---|---|---|
| Prin. Bal. Check No. | | | | | | | |
| Previously Posted Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Check Payee Desc. | | | | | | | |
| Held Funds Code | | | | | | | |
| Adv. Effective Date | | | | | | | |
| Batch Code | 2DH | 2DH | 2DH | 2DH | 2DH | 2DH | 2DH |
| Sequence No. | 999999 | 999999 | 999999 | 999999 | 999999 | 999999 | 999999 |
| Action | 0000 | 0000 | 0000 | 0000 | 0000 | 0000 | 0000 |
| Service Fee Paid Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Current Deferred Interest YTD | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Deferred Interest Adjust Code | | | | | | | |
| Life Year-to-date Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Current Deferred Interest LTD | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Life Deferred Interest Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Manual Check Code | | | | | | | |
| Disbursement Check No. | 835986 | 835986 | 835986 | 835986 | 835986 | 835986 | 835986 |
| From Payee | | | | | | | |
| Refund Description | | | | | | | |
| Sequence Code | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Processor ID | ER4 | ER4 | ER4 | ER4 | ER4 | ER4 | ER4 |
| MRec Corp. Adv. Amt. | | | | $60.00 | $105.00 | | |
| MRec Corp. Advance Bal. | $1,385.50 | $1,385.50 | $1,385.50 | $1,385.50 | $1,325.00 | $1,220.50 | $1,220.50 |
| 3rd Party Corp. Adv. Amt. | $105.00 | $0.10 | $20.00 | $0.00 | $0.00 | $24.50 | $0.10 |
| 3rd Party Corp. Adv. Bal. | $1,361.40 | $1,256.40 | $1,256.30 | $1,236.30 | $1,236.30 | $1,236.30 | $1,211.80 |
| Non-Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Non-Rec. Corp. Adv. Bal. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Corp. Advance Payee | 90T01 | 90T01 | 90T01 | 90R01 | 90R01 | 90T01 | 90T01 |
| Payee | | | | | | | |
| Reason Code | FCTC | INHZ | RPDO | RPSC | RPBP | RPSK | INHZ |
| ELOC Payee 1 | | | | | | | |
| ELOC Payee 2 | | | | | | | |
| Mod. Payment Logic Plan ID | | | | | | | |
| 1098 Adjustment Flag | | | | | | | |
| Consumer Payment Plan | | | | | | | |
| Segment Type | | | | | | | |
| Access Channel/Source | | | | | | | |
| Consumer Promotion ID | | | | | | | |
| Capitalized Interest Paid Amt. | | | | | | | |
| Capitalized Interest Amt. | | | | | | | |
| Principal Forbearance Amt. | | | | | | | |
| Principal Reduction Amt. | | | | | | | |

## Current History (12/17/2022 - 02/24/2025) - All Transactions Transactions

■ - NEW AMERICAN FUNDING

**Loan Number:** ████████                                    **Borrower Name:** LEE,MICHELLE DEON

| Transaction Applied Date | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 |
|---|---|---|---|---|---|---|---|
| **Investor Type** | | | | | | | |
| **2-To-1 Indicator** | | | | | | | |
| **Payment Application Ind.** | | | | | | | |
| **Process Date Sequence No.** | 27 | 26 | 25 | 24 | 23 | 22 | 21 |
| **Scheduled Payment Amt. Due** | | | | | | | |
| **Scheduled Payment Amt. Ind.** | | | | | | | |
| **Source of Funds** | | | | | | | |

## Current History (12/17/2022 - 02/24/2025) - All Transactions Transactions

■ - NEW AMERICAN FUNDING

**Loan Number:** ▮▮▮▮▮▮▮                                    **Borrower Name:** LEE,MICHELLE DEON

| Transaction Applied Date | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 |
|---|---|---|---|---|---|---|---|
| Segment Number | | | | | | | |
| Due Date | | | | | | | |
| Transaction Type/Code | 6  01 | 6  01 | 6  01 | 6  01 | 6  01 | 6  01 | 6  01 |
| Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Principal Paid | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Principal Balance | $392,002.97 | $392,002.97 | $392,002.97 | $392,002.97 | $392,002.97 | $392,002.97 | $392,002.97 |
| Interest Paid | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Escrow Paid | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Escrow Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Late Charge Fee Code | | | | | | | |
| Late Charge Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Miscellaneous Paid | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Advance Balance | $1,168.53 | $1,168.53 | $1,168.53 | $1,168.53 | $1,168.53 | $1,168.53 | $1,168.53 |
| Suspense Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Payee Code | | | | | | | |
| Restricted Escrow | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| BSC Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| FHA Payment Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Refund Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Replace Reserve | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| HUD Payment | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| HUD Fee Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Reapplied Fee Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Change Owner Fee | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Capitalization Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| DIB/Old Interest Rate | | | | | | | |
| New Interest Rate | | | | | | | |
| Old P & I Amt. | | | | | | | |
| New P & I Amt. | | | | | | | |
| Old Due Date | | | | | | | |
| Unearned Interest Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Unearned Interest Bal. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Credit Life Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Origination Fee Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Effective Date | | | | | | | |
| FS Principal Amt. | | | | | | | |
| FS Interest Amt. | | | | | | | |
| Interest Due Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| IOE/IORE Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Hi Type | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Principal Advance Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

## Current History (12/17/2022 - 02/24/2025) - All Transactions Transactions

■ - NEW AMERICAN FUNDING

**Loan Number:** ████████

**Borrower Name:** LEE,MICHELLE DEON

| Transaction Applied Date | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 |
|---|---|---|---|---|---|---|---|
| Prin. Bal. Check No. | | | | | | | |
| Previously Posted Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Check Payee Desc. | | | | | | | |
| Held Funds Code | | | | | | | |
| Adv. Effective Date | | | | | | | |
| Batch Code | 2DH | 2DH | 2DH | 2DH | 2DH | 2DH | 2DH |
| Sequence No. | 999999 | 999999 | 999999 | 999999 | 999999 | 999999 | 999999 |
| Action | 0000 | 0000 | 0000 | 0000 | 0000 | 0000 | 0000 |
| Service Fee Paid Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Current Deferred Interest YTD | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Deferred Interest Adjust Code | | | | | | | |
| Life Year-to-date Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Current Deferred Interest LTD | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Life Deferred Interest Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Manual Check Code | | | | | | | |
| Disbursement Check No. | 835986 | 835986 | 835986 | 835986 | 835986 | 835986 | 835986 |
| From Payee | | | | | | | |
| Refund Description | | | | | | | |
| Sequence Code | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Processor ID | ER4 | ER4 | ER4 | ER4 | ER4 | ER4 | ER4 |
| MRec Corp. Adv. Amt. | | $19.00 | $445.50 | | | | $30.00 |
| MRec Corp. Advance Bal. | $1,220.50 | $1,220.50 | $1,201.50 | $756.00 | $756.00 | $756.00 | $756.00 |
| 3rd Party Corp. Adv. Amt. | $15.40 | $0.00 | $0.00 | $2.50 | $0.10 | $350.00 | $0.00 |
| 3rd Party Corp. Adv. Bal. | $1,211.70 | $1,196.30 | $1,196.30 | $1,196.30 | $1,193.80 | $1,193.70 | $843.70 |
| Non-Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Non-Rec. Corp. Adv. Bal. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Corp. Advance Payee | 90T01 | 90R01 | 90R01 | 90T01 | 90T01 | 90T01 | 90R01 |
| Payee | | | | | | | |
| Reason Code | MAIL | OCIF | FCAF | LASN | INHZ | RPAT | OCIF |
| ELOC Payee 1 | | | | | | | |
| ELOC Payee 2 | | | | | | | |
| Mod. Payment Logic Plan ID | | | | | | | |
| 1098 Adjustment Flag | | | | | | | |
| Consumer Payment Plan | | | | | | | |
| Segment Type | | | | | | | |
| Access Channel/Source | | | | | | | |
| Consumer Promotion ID | | | | | | | |
| Capitalized Interest Paid Amt. | | | | | | | |
| Capitalized Interest Amt. | | | | | | | |
| Principal Forbearance Amt. | | | | | | | |
| Principal Reduction Amt. | | | | | | | |

## Current History (12/17/2022 - 02/24/2025) - All Transactions Transactions

■ - NEW AMERICAN FUNDING

**Loan Number:** ▇▇▇▇▇▇▇

**Borrower Name:** LEE,MICHELLE DEON

| Transaction Applied Date | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 |
|---|---|---|---|---|---|---|---|
| **Investor Type** | | | | | | | |
| **2-To-1 Indicator** | | | | | | | |
| **Payment Application Ind.** | | | | | | | |
| **Process Date Sequence No.** | 20 | 19 | 18 | 17 | 16 | 15 | 14 |
| **Scheduled Payment Amt. Due** | | | | | | | |
| **Scheduled Payment Amt. Ind.** | | | | | | | |
| **Source of Funds** | | | | | | | |

## Current History (12/17/2022 - 02/24/2025) - All Transactions Transactions
■ - NEW AMERICAN FUNDING

**Loan Number:** ▮▮▮▮▮▮                                    **Borrower Name:** LEE,MICHELLE DEON

| Transaction Applied Date | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 |
|---|---|---|---|---|---|---|---|
| Segment Number | | | | | | | |
| Due Date | | | | | | | |
| Transaction Type/Code | 6  01 | 6  01 | 6  01 | 6  01 | 6  01 | 6  01 | 6  01 |
| Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Principal Paid | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Principal Balance | $392,002.97 | $392,002.97 | $392,002.97 | $392,002.97 | $392,002.97 | $392,002.97 | $392,002.97 |
| Interest Paid | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Escrow Paid | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Escrow Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Late Charge Fee Code | | | | | | | |
| Late Charge Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Miscellaneous Paid | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Advance Balance | $1,168.53 | $1,168.53 | $1,168.53 | $1,168.53 | $1,168.53 | $1,168.53 | $1,168.53 |
| Suspense Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Payee Code | | | | | | | |
| Restricted Escrow | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| BSC Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| FHA Payment Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Refund Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Replace Reserve | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| HUD Payment | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| HUD Fee Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Reapplied Fee Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Change Owner Fee | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Capitalization Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| DIB/Old Interest Rate | | | | | | | |
| New Interest Rate | | | | | | | |
| Old P & I Amt. | | | | | | | |
| New P & I Amt. | | | | | | | |
| Old Due Date | | | | | | | |
| Unearned Interest Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Unearned Interest Bal. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Credit Life Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Origination Fee Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Effective Date | | | | | | | |
| FS Principal Amt. | | | | | | | |
| FS Interest Amt. | | | | | | | |
| Interest Due Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| IOE/IORE Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Hi Type | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Principal Advance Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

**Current History (12/17/2022 - 02/24/2025) - All Transactions Transactions**

■ - NEW AMERICAN FUNDING

**Loan Number:** ███████        **Borrower Name:** LEE,MICHELLE DEON

| Transaction Applied Date | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 |
|---|---|---|---|---|---|---|---|
| Prin. Bal. Check No. | | | | | | | |
| Previously Posted Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Check Payee Desc. | | | | | | | |
| Held Funds Code | | | | | | | |
| Adv. Effective Date | | | | | | | |
| Batch Code | 2DH | 2DH | 2DH | 2DH | 2DH | 2DH | 2DH |
| Sequence No. | 999999 | 999999 | 999999 | 999999 | 999999 | 999999 | 999999 |
| Action | 0000 | 0000 | 0000 | 0000 | 0000 | 0000 | 0000 |
| Service Fee Paid Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Current Deferred Interest YTD | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Deferred Interest Adjust Code | | | | | | | |
| Life Year-to-date Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Current Deferred Interest LTD | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Life Deferred Interest Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Manual Check Code | | | | | | | |
| Disbursement Check No. | 835986 | 835986 | 835986 | 835986 | 835986 | 835986 | 835986 |
| From Payee | | | | | | | |
| Refund Description | | | | | | | |
| Sequence Code | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Processor ID | ER4 | ER4 | ER4 | ER4 | ER4 | ER4 | ER4 |
| MRec Corp. Adv. Amt. | $50.00 | | | | $30.00 | $100.00 | |
| MRec Corp. Advance Bal. | $726.00 | $676.00 | $676.00 | $676.00 | $676.00 | $646.00 | $546.00 |
| 3rd Party Corp. Adv. Amt. | $0.00 | $13.00 | $0.10 | $720.00 | $0.00 | $0.00 | $17.40 |
| 3rd Party Corp. Adv. Bal. | $843.70 | $843.70 | $830.70 | $830.60 | $110.60 | $110.60 | $110.60 |
| Non-Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Non-Rec. Corp. Adv. Bal. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Corp. Advance Payee | 90R01 | 90T01 | 90T01 | 90T01 | 90R01 | 90R01 | 90T01 |
| Payee | | | | | | | |
| Reason Code | FCAC | LASN | INHZ | RPAT | OCIF | FCAC | PROP |
| ELOC Payee 1 | | | | | | | |
| ELOC Payee 2 | | | | | | | |
| Mod. Payment Logic Plan ID | | | | | | | |
| 1098 Adjustment Flag | | | | | | | |
| Consumer Payment Plan | | | | | | | |
| Segment Type | | | | | | | |
| Access Channel/Source | | | | | | | |
| Consumer Promotion ID | | | | | | | |
| Capitalized Interest Paid Amt. | | | | | | | |
| Capitalized Interest Amt. | | | | | | | |
| Principal Forbearance Amt. | | | | | | | |
| Principal Reduction Amt. | | | | | | | |

## Current History (12/17/2022 - 02/24/2025) - All Transactions Transactions

■ - NEW AMERICAN FUNDING

**Loan Number:** ███████

**Borrower Name:** LEE,MICHELLE DEON

| Transaction Applied Date | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 |
|---|---|---|---|---|---|---|---|
| Investor Type | | | | | | | |
| 2-To-1 Indicator | | | | | | | |
| Payment Application Ind. | | | | | | | |
| Process Date Sequence No. | 13 | 12 | 11 | 10 | 9 | 8 | 7 |
| Scheduled Payment Amt. Due | | | | | | | |
| Scheduled Payment Amt. Ind. | | | | | | | |
| Source of Funds | | | | | | | |

## Current History (12/17/2022 - 02/24/2025) - All Transactions Transactions

### ■ - NEW AMERICAN FUNDING

**Loan Number:** ██████████                                    **Borrower Name:** LEE,MICHELLE DEON

| Transaction Applied Date | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/05/2024 |
|---|---|---|---|---|---|---|---|
| Segment Number | | | | | | | |
| Due Date | | | | | | | 05/01/2024 |
| Transaction Type/Code | 6  01 | 6  01 | 6  01 | 6  01 | 6  01 | 6  01 | 1  32 |
| Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Principal Paid | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Principal Balance | $392,002.97 | $392,002.97 | $392,002.97 | $392,002.97 | $392,002.97 | $392,002.97 | $392,002.97 |
| Interest Paid | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Escrow Paid | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Escrow Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Late Charge Fee Code | | | | | | | 1 |
| Late Charge Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | -$161.76 |
| Miscellaneous Paid | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Advance Balance | $1,168.53 | $1,168.53 | $1,168.53 | $1,168.53 | $1,168.53 | $1,168.53 | $1,168.53 |
| Suspense Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Payee Code | | | | | | | |
| Restricted Escrow | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| BSC Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| FHA Payment Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Refund Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Replace Reserve | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| HUD Payment | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| HUD Fee Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Reapplied Fee Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Change Owner Fee | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Capitalization Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| DIB/Old Interest Rate | | | | | | | |
| New Interest Rate | | | | | | | |
| Old P & I Amt. | | | | | | | |
| New P & I Amt. | | | | | | | |
| Old Due Date | | | | | | | |
| Unearned Interest Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Unearned Interest Bal. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Credit Life Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Origination Fee Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Effective Date | | | | | | | |
| FS Principal Amt. | | | | | | | |
| FS Interest Amt. | | | | | | | |
| Interest Due Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| IOE/IORE Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Hi Type | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Principal Advance Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

## Current History (12/17/2022 - 02/24/2025) - All Transactions Transactions

■ - NEW AMERICAN FUNDING

**Loan Number:** ▮▮▮▮▮▮▮      **Borrower Name:** LEE,MICHELLE DEON

| Transaction Applied Date | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/05/2024 |
|---|---|---|---|---|---|---|---|
| Prin. Bal. Check No. | | | | | | | |
| Previously Posted Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Check Payee Desc. | | | | | | | |
| Held Funds Code | | | | | | | |
| Adv. Effective Date | | | | | | | |
| Batch Code | 2DH | 2DH | 2DH | 2DH | 2DH | 2DH | ER4 |
| Sequence No. | 999999 | 999999 | 999999 | 999999 | 999999 | 999999 | 130287 |
| Action | 0000 | 0000 | 0000 | 0000 | 0000 | 0000 | 0000 |
| Service Fee Paid Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Current Deferred Interest YTD | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Deferred Interest Adjust Code | | | | | | | |
| Life Year-to-date Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Current Deferred Interest LTD | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Life Deferred Interest Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Manual Check Code | | | | | | | |
| Disbursement Check No. | 835986 | 835986 | 835986 | 835986 | 835986 | 835986 | |
| From Payee | | | | | | | |
| Refund Description | | | | | | | |
| Sequence Code | 1 | 1 | 1 | 1 | 1 | 1 | 0 |
| Processor ID | ER4 | ER4 | ER4 | ER4 | ER4 | ER4 | |
| MRec Corp. Adv. Amt. | | | $30.00 | $236.00 | | | $0.00 |
| MRec Corp. Advance Bal. | $546.00 | $546.00 | $546.00 | $516.00 | $280.00 | $280.00 | $280.00 |
| 3rd Party Corp. Adv. Amt. | $0.10 | $18.00 | $0.00 | $0.00 | $75.00 | $0.10 | $0.00 |
| 3rd Party Corp. Adv. Bal. | $93.20 | $93.10 | $75.10 | $75.10 | $75.10 | $0.10 | $0.00 |
| Non-Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Non-Rec. Corp. Adv. Bal. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Corp. Advance Payee | 90T01 | 90T01 | 90R01 | 90R01 | 90T01 | 90T01 | |
| Payee | | | | | | | |
| Reason Code | INHZ | LASN | OCIF | FCAC | PROP | INHZ | |
| ELOC Payee 1 | | | | | | | |
| ELOC Payee 2 | | | | | | | |
| Mod. Payment Logic Plan ID | | | | | | | |
| 1098 Adjustment Flag | | | | | | | |
| Consumer Payment Plan | | | | | | | |
| Segment Type | | | | | | | |
| Access Channel/Source | | | | | | | |
| Consumer Promotion ID | | | | | | | |
| Capitalized Interest Paid Amt. | | | | | | | |
| Capitalized Interest Amt. | | | | | | | |
| Principal Forbearance Amt. | | | | | | | |
| Principal Reduction Amt. | | | | | | | |

## Current History (12/17/2022 - 02/24/2025) - All Transactions Transactions

■ - NEW AMERICAN FUNDING

**Loan Number:** ███████     **Borrower Name:** LEE,MICHELLE DEON

| Transaction Applied Date | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/06/2024 | 12/05/2024 |
|---|---|---|---|---|---|---|---|
| Investor Type | | | | | | | |
| 2-To-1 Indicator | | | | | | | |
| Payment Application Ind. | | | | | | | |
| Process Date Sequence No. | 6 | 5 | 4 | 3 | 2 | 1 | 1 |
| Scheduled Payment Amt. Due | | | | | | | |
| Scheduled Payment Amt. Ind. | | | | | | | |
| Source of Funds | | | | | | | |

## Current History (12/17/2022 - 02/24/2025) - All Transactions Transactions

■ - NEW AMERICAN FUNDING

**Loan Number:** ███████████                                    **Borrower Name:** LEE,MICHELLE DEON

| Transaction Applied Date | 12/03/2024 | 11/15/2024 | 11/12/2024 | 11/05/2024 | 11/05/2024 | 11/05/2024 | 11/05/2024 |
|---|---|---|---|---|---|---|---|
| Segment Number | | | | | | | |
| Due Date | | | | 05/01/2024 | 05/01/2024 | | 05/01/2024 |
| Transaction Type/Code | 6  01 | 6  31 | 6  30 | 1  61 | 1  70 | 7  45 | 1  70 |
| Amount | $0.00 | $0.00 | $0.00 | $1,168.53 | $168.54 | -$168.54 | -$168.54 |
| Principal Paid | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Principal Balance | $392,002.97 | $392,002.97 | $392,002.97 | $392,002.97 | $392,002.97 | $392,002.97 | $392,002.97 |
| Interest Paid | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Escrow Paid | $0.00 | $0.00 | $0.00 | $1,168.53 | $0.00 | $0.00 | -$1,168.53 |
| Escrow Balance | $0.00 | $0.00 | $0.00 | $0.00 | -$1,168.53 | -$1,168.53 | -$1,168.53 |
| Late Charge Fee Code | | | | | * | | * |
| Late Charge Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $168.54 | $0.00 | $999.99 |
| Miscellaneous Paid | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Advance Balance | $1,168.53 | $1,168.53 | $1,168.53 | $1,168.53 | $0.00 | $0.00 | $0.00 |
| Suspense Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Payee Code | | SVL001 | SVL002 | | | | |
| Restricted Escrow | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| BSC Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| FHA Payment Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Refund Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Replace Reserve | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| HUD Payment | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| HUD Fee Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Reapplied Fee Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Change Owner Fee | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Capitalization Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| DIB/Old Interest Rate | | | | | | | |
| New Interest Rate | | | | | | | |
| Old P & I Amt. | | | | | | | |
| New P & I Amt. | | | | | | | |
| Old Due Date | | | | | | | |
| Unearned Interest Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Unearned Interest Bal. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Credit Life Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Origination Fee Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Effective Date | | | | | | | 11/05/2024 |
| FS Principal Amt. | | | | | | | |
| FS Interest Amt. | | | | | | | |
| Interest Due Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| IOE/IORE Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Hi Type | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Principal Advance Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

## Current History (12/17/2022 - 02/24/2025) - All Transactions Transactions

■ - NEW AMERICAN FUNDING

**Loan Number:** ███████                                       **Borrower Name:** LEE,MICHELLE DEON

| Transaction Applied Date | 12/03/2024 | 11/15/2024 | 11/12/2024 | 11/05/2024 | 11/05/2024 | 11/05/2024 | 11/05/2024 |
|---|---|---|---|---|---|---|---|
| Prin. Bal. Check No. | | | | | | | |
| Previously Posted Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Check Payee Desc. | | | | | | | |
| Held Funds Code | | | | | | | |
| Adv. Effective Date | | | | | | | |
| Batch Code | 2DA | NI* | NI* | | 4GA | ### | 4GA |
| Sequence No. | 999999 | 999999 | 999999 | 999999 | 91965 | 999999 | 91963 |
| Action | 0000 | 0000 | 0000 | 0000 | 0000 | 0000 | 0000 |
| Service Fee Paid Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Current Deferred Interest YTD | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Deferred Interest Adjust Code | | | | | | | |
| Life Year-to-date Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Current Deferred Interest LTD | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Life Deferred Interest Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Manual Check Code | | | | | | | |
| Disbursement Check No. | 834593 | WIRE | WIRE | | | | |
| From Payee | | | | | | | |
| Refund Description | | | | | | | |
| Sequence Code | 1 | 0 | 0 | 0 | 0 | 0 | 0 |
| Processor ID | ML3 | NIV | NIV | | | ### | |
| MRec Corp. Adv. Amt. | $1,168.53 | $30.00 | $250.00 | $0.00 | $0.00 | -$168.54 | $0.00 |
| MRec Corp. Advance Bal. | $280.00 | -$888.53 | -$918.53 | -$1,168.53 | -$1,168.53 | -$1,168.53 | -$999.99 |
| 3rd Party Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3rd Party Corp. Adv. Bal. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Non-Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Non-Rec. Corp. Adv. Bal. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Corp. Advance Payee | 90R01 | 90R01 | 90R01 | | 90R01 | 90R01 | 90R01 |
| Payee | | SVL001 | SVL002 | | | | |
| Reason Code | ESAV | OCIF | TLTC | | ESAV | ESAV | ESAV |
| ELOC Payee 1 | | | | | | | |
| ELOC Payee 2 | | | | | | | |
| Mod. Payment Logic Plan ID | | | | | | | |
| 1098 Adjustment Flag | | | | | | | |
| Consumer Payment Plan | | | | | | | |
| Segment Type | | | | | | | |
| Access Channel/Source | | | | | | | |
| Consumer Promotion ID | | | | | | | |
| Capitalized Interest Paid Amt. | | | | | | | |
| Capitalized Interest Amt. | | | | | | | |
| Principal Forbearance Amt. | | | | | | | |
| Principal Reduction Amt. | | | | | | | |

## Current History (12/17/2022 - 02/24/2025) - All Transactions Transactions

██ - NEW AMERICAN FUNDING

**Loan Number:** ████████

**Borrower Name:** LEE,MICHELLE DEON

| Transaction Applied Date | 12/03/2024 | 11/15/2024 | 11/12/2024 | 11/05/2024 | 11/05/2024 | 11/05/2024 | 11/05/2024 |
|---|---|---|---|---|---|---|---|
| **Investor Type** | | | | | | | |
| **2-To-1 Indicator** | | | | | | | |
| **Payment Application Ind.** | | | | | | | |
| **Process Date Sequence No.** | 1 | 1 | 1 | 5 | 4 | 3 | 2 |
| **Scheduled Payment Amt. Due** | | | | | | | |
| **Scheduled Payment Amt. Ind.** | | | | | | | |
| **Source of Funds** | | | | | | | |

## Current History (12/17/2022 - 02/24/2025) - All Transactions Transactions

■ - NEW AMERICAN FUNDING

**Loan Number:** ▮▮▮▮▮▮▮                                    **Borrower Name:** LEE,MICHELLE DEON

| Transaction Applied Date | 11/05/2024 | 10/29/2024 |
|---|---|---|
| Segment Number | | |
| Due Date | | 05/01/2024 |
| Transaction Type/Code | 7  45 | 1  42 |
| Amount | -$999.99 | $0.00 |
| Principal Paid | $0.00 | -$392,002.97 |
| Principal Balance | $392,002.97 | $392,002.97 |
| Interest Paid | $0.00 | $0.00 |
| Escrow Paid | $0.00 | $0.00 |
| Escrow Balance | $0.00 | $0.00 |
| Late Charge Fee Code | | |
| Late Charge Amt. | $0.00 | $0.00 |
| Miscellaneous Paid | $0.00 | $0.00 |
| Advance Balance | $0.00 | $0.00 |
| Suspense Balance | $0.00 | $0.00 |
| Payee Code | | |
| Restricted Escrow | $0.00 | $0.00 |
| BSC Amt. | $0.00 | $0.00 |
| FHA Payment Amt. | $0.00 | $0.00 |
| Refund Amt. | $0.00 | $0.00 |
| Replace Reserve | $0.00 | $0.00 |
| HUD Payment | $0.00 | $0.00 |
| HUD Fee Amt. | $0.00 | $0.00 |
| Reapplied Fee Amt. | $0.00 | $0.00 |
| Change Owner Fee | $0.00 | $0.00 |
| Capitalization Amt. | $0.00 | $0.00 |
| DIB/Old Interest Rate | | |
| New Interest Rate | | |
| Old P & I Amt. | | |
| New P & I Amt. | | |
| Old Due Date | | |
| Unearned Interest Amt. | $0.00 | $0.00 |
| Unearned Interest Bal. | $0.00 | $0.00 |
| Credit Life Amt. | $0.00 | $0.00 |
| Origination Fee Amt. | $0.00 | $0.00 |
| Effective Date | | |
| FS Principal Amt. | | |
| FS Interest Amt. | | |
| Interest Due Amt. | $0.00 | $0.00 |
| IOE/IORE Amt. | $0.00 | $0.00 |
| Hi Type | 1 | 1 |
| Principal Advance Amt. | $0.00 | $0.00 |

## Current History (12/17/2022 - 02/24/2025) - All Transactions Transactions

■ - NEW AMERICAN FUNDING

**Loan Number:** ▮                                          **Borrower Name:** LEE,MICHELLE DEON

| Transaction Applied Date | 11/05/2024 | 10/29/2024 |
|---|---|---|
| Prin. Bal. Check No. | | |
| Previously Posted Amt. | $0.00 | $0.00 |
| Check Payee Desc. | | |
| Held Funds Code | | |
| Adv. Effective Date | | |
| Batch Code | ### | NRP |
| Sequence No. | 999999 | 59829 |
| Action | 0000 | 0000 |
| Service Fee Paid Amt. | $0.00 | $0.00 |
| Current Deferred Interest YTD | $0.00 | $0.00 |
| Deferred Interest Adjust Code | | |
| Life Year-to-date Amt. | $0.00 | $0.00 |
| Current Deferred Interest LTD | $0.00 | $0.00 |
| Life Deferred Interest Amt. | $0.00 | $0.00 |
| Manual Check Code | | |
| Disbursement Check No. | | |
| From Payee | | |
| Refund Description | | |
| Sequence Code | 0 | 0 |
| Processor ID | ### | |
| MRec Corp. Adv. Amt. | -$999.99 | $0.00 |
| MRec Corp. Advance Bal. | -$999.99 | $0.00 |
| 3rd Party Corp. Adv. Amt. | $0.00 | $0.00 |
| 3rd Party Corp. Adv. Bal. | $0.00 | $0.00 |
| Non-Rec. Corp. Adv. Amt. | $0.00 | $0.00 |
| Non-Rec. Corp. Adv. Bal. | $0.00 | $0.00 |
| Corp. Advance Payee | 90R01 | |
| Payee | | |
| Reason Code | ESAV | |
| ELOC Payee 1 | | |
| ELOC Payee 2 | | |
| Mod. Payment Logic Plan ID | | |
| 1098 Adjustment Flag | | |
| Consumer Payment Plan | | |
| Segment Type | | |
| Access Channel/Source | | |
| Consumer Promotion ID | | |
| Capitalized Interest Paid Amt. | | |
| Capitalized Interest Amt. | | |
| Principal Forbearance Amt. | | |
| Principal Reduction Amt. | | |

## Current History (12/17/2022 - 02/24/2025) - All Transactions Transactions

■ - NEW AMERICAN FUNDING

**Loan Number:** ███████

**Borrower Name:** LEE,MICHELLE DEON

| Transaction Applied Date | 11/05/2024 | 10/29/2024 |
|---|---|---|
| Investor Type | | |
| 2-To-1 Indicator | | |
| Payment Application Ind. | | |
| Process Date Sequence No. | 1 | 1 |
| Scheduled Payment Amt. Due | | |
| Scheduled Payment Amt. Ind. | | |
| Source of Funds | | |

## <u>UNSWORN DECLARATION OF MILITARY SERVICE UNDER PENALTY OF PERJURY</u>

I, Heather L. Deere, an attorney employed by Halliday, Watkins & Mann, P.C. and being over the age of 18, hereby declares in accordance with the Servicemembers Civil Relief Act ("SCRA") as follows:

In support of this Declaration, a search of the Department of Defense Manpower Data Center was performed for the military status of Michelle Deon Lee, the Debtor in Case No. 24-16918-KHT on March 19, 2025.  The search indicated that there was no information, as to all branches of the military, that the Debtors are persons currently on active duty.

I have personally reviewed the searches detailed above and I declare based on my personal knowledge and under penalty of perjury the facts contained in the Declaration are true and correct.

Dated: March 20, 2025

Halliday, Watkins & Mann, P.C.

<u>/s/ Heather L. Deere</u>
Heather L. Deere, #28597
Attorney for Movant
355 Union Blvd., Suite 250
Lakewood, CO 80228
303-274-0155
bankruptcyco@hwmlawfirm.com
File No. CO23159



Department of Defense Manpower Data Center

Results as of : Mar-19-2025 07:56:17 AM EDT

SCRA 5.24

## Status Report
## Pursuant to Servicemembers Civil Relief Act

SSN:            XXX-XX-0459

Birth Date:

Last Name:      LEE

First Name:     MICHELLE

Middle Name:    DEON

Status As Of:   Mar-19-2025

Certificate ID: WB3TZZYQYPL83KY

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, Space Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Sam Yousefzadeh*

Sam Yousefzadeh, Director
Department of Defense - Manpower Data Center
4800 Mark Center Drive, Suite 04E25
Alexandria, VA 22350

CO23159

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 3901 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q35) via this URL: https://scra.dmdc.osd.mil/scra/#/faqs. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. § 3921(c).

This response reflects the following information:  (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days  preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1).  Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available.  In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds.  All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support.  This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs).  Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate.  SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction.  The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING:  This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester.  Providing erroneous information will cause an erroneous certificate to be provided.

CO23159



Department of Defense Manpower Data Center

Results as of : Mar-19-2025 07:56:17 AM EDT

SCRA 5.24

**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

SSN: XXX-XX-0459

Birth Date:

Last Name: LEE

First Name: MICHELLE

Middle Name: DEON

Status As Of: Mar-19-2025

Certificate ID: C63Q38KV1XYX2J9

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, Space Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Sam Yousefzadeh*

Sam Yousefzadeh, Director
Department of Defense - Manpower Data Center
4800 Mark Center Drive, Suite 04E25
Alexandria, VA 22350

CO23159

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 3901 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q35) via this URL: https://scra.dmdc.osd.mil/scra/#/faqs. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. § 3921(c).

This response reflects the following information:  (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days  preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1).  Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available.  In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds.  All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support.  This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs).  Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate.  SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction.  The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING:  This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester.  Providing erroneous information will cause an erroneous certificate to be provided.

CO23159

Department of Defense Manpower Data Center

Results as of : Mar-19-2025 07:56:17 AM EDT

SCRA 5.24



## Status Report
## Pursuant to Servicemembers Civil Relief Act

SSN:           XXX-XX-0459

Birth Date:

Last Name:     LEE

First Name:    MICHELLE

Middle Name:

Status As Of:  Mar-19-2025

Certificate ID: LSDF3KYWWFKYTCT

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, Space Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Sam Yousefzadeh*

Sam Yousefzadeh, Director
Department of Defense - Manpower Data Center
4800 Mark Center Drive, Suite 04E25
Alexandria, VA 22350

CO23159

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 3901 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q35) via this URL: https://scra.dmdc.osd.mil/scra/#/faqs. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. § 3921(c).

This response reflects the following information:  (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days  preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1).  Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available.  In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds.  All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support.  This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs).  Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate.  SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction.  The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING:  This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester.  Providing erroneous information will cause an erroneous certificate to be provided.

CO23159



Department of Defense Manpower Data Center

Results as of : Mar-19-2025 07:56:17 AM EDT

SCRA 5.24

**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

SSN:    XXX-XX-0459

Birth Date:

Last Name:  LEE

First Name:  MICHELLE

Middle Name:

Status As Of: Mar-19-2025

Certificate ID: DB03L006R2QL2V4

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, Space Force, NOAA, Public Health, and Coast Guard).  This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Sam Yousefzadeh*

Sam Yousefzadeh, Director
Department of Defense - Manpower Data Center
4800 Mark Center Drive, Suite 04E25
Alexandria, VA 22350

CO23159

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 3901 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q35) via this URL: https://scra.dmdc.osd.mil/scra/#/faqs. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. § 3921(c).

This response reflects the following information: (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1). Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available. In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds. All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support. This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs). Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate. SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction. The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING: This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester. Providing erroneous information will cause an erroneous certificate to be provided.

CO23159

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

IN RE:                                    Case No. 24-16918-KHT
                                          Chapter 7

Michelle Deon Lee
Debtor.

New American Funding, LLC
Movant,

vs.

Michelle Deon Lee and Tom H. Connolly, Chapter 7 Trustee,
Respondents.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on March 20, 2025, copies of the Motion for Relief from Stay, Notice of Motion for Relief from Stay and Opportunity for Hearing and Proposed Order were electronically served via the Court's CM/ECF electronic service system pursuant to L.B.R. 9036-1(a) on the following:

John Scanlan
Attorney for Debtor
*via CM/ECF*

Tom H. Connolly
Chapter 7 Trustee
*via CM/ECF*

U.S. Trustee
*via CM/ECF*

The undersigned certifies that on March 20, 2025, copies of the Motion for Relief from Stay, Notice of Motion for Relief from Stay and Opportunity for Hearing and Proposed Order were served via U.S. Mail, postage prepaid, on all parties against whom relief is sought and those otherwise entitled to service pursuant to Fed.R.Bankr.P. and these L.B.R. at the following addresses:

Michelle Deon Lee
16480 Fairway Dr
Commerce City, CO 80022

                          /s/Lisa Bartlett