

FILED
CLERK OF COURT

MAY 1 3 2025

U.S. BANKRUPTCY COURT
DISTRICT OF COLORADO

**Michelle Deon Lee**
**Case No: 24-16918-KHT**
**16480 Fairway Dr. Commerce Co. 80022**

**OBJECTION TO BELLCO'S PETITIONS AND REQUEST FOR TEMPORARY RESTRAINING ORDER.**

**Objection and Motion for Sanctions for Violation of Automatic Stay**

Bankruptcy is a legal process designed to provide relief and protection for debtors, including an automatic stay that stops most collection activities. If the creditor is threatening to take actions such as trying to occupy or otherwise gain access to my land outside of the bankruptcy process, this is a serious violation of my rights and the law.

The original foreclosure was ignored in my bankruptcy filing Belloc continued actions against my homestead, this is a legal violation. Under federal law, particularly 11 U.S.C. § 362(a), the automatic stay generally prohibits most collection activities, including foreclosure, once a bankruptcy case is filed. I had to file a motion to stop the sale of my home less than 30 days of auction. **On April 7, 2025, I provided the trustee and my attorney with my full cooperation, including all necessary documentation to facilitate the sale of all my real estate assets. I furnished them with my realtor information and an independent evaluation for each property. There was no hesitation, delay, or lack of cooperation on my part.**

**I respectfully request that this Court not remove or lift the automatic stay of proceedings until a thorough and complete investigation into the allegations of misconduct, fraud, and violations of rights has been conducted. It is essential that the integrity of this process be preserved, and that no further action—such as sale, encumbrance, or transfer of the property—be permitted until these issues are fully examined and resolved by the Court. Removing the stay prematurely could result in irreparable harm and undermine the pursuit of justice and fairness in this matter.\*\***

**Objection on a LEGAL BASIS:**

1. **Filing Conflicting or False Claims**:
The Creditor has engaged in **filing conflicting claims** and **withholding critical information such as account numbers**. This conduct appears designed to **mislead the Court and unlawfully encumber or seize my homestead property**. Such actions violate the **duty of good faith and fair dealing** inherent in bankruptcy proceedings, and breach the obligations imposed by federal and state law.

**FACTUAL ALLEGATIONS:**

· Under 11 U.S.C. § 362(k), the Court has the authority to sanction creditors who willfully violate the stay, including damages, attorney's fees, and injunctive relief. The act of filing conflicting claims with incomplete or false information designed to unlawfully encumber the property also breaches the obligation of good faith and fair dealing under applicable law and federal bankruptcy protections.

- The Creditor filed claims that **lack critical identifying information (such as account numbers)** and contain conflicting data, which appears to be an attempt to unlawfully pursue foreclosure or possession efforts.
- These actions constitute a **willful violation of the automatic stay** and an attempt to **mislead the Court and misuse legal processes**

· . Exhibit #1 see attached  blacked out account numbers and totals conflicting.

### OBJECTION AND MOTION FOR CONTEMPT AND DAMAGES FOR WILLFUL VIOLATION OF THE AUTOMATIC STAY AND DEFAMATION

*Due to the blatant and disrespectful conduct of Bellco in disregarding the automatic stay order, including posting foreclosure notices and taking actions inconsistent with the court's protections, the I have suffered significant financial harm. Specifically, I have experienced a loss of approximately $15,000 per month in contractual income, amounting to a substantial financial hardship and opportunity cost. Bellco's actions of my homestead demonstrated a disregard for the court's rulings and the Debtor's rights, and such conduct warrants appropriate damages and relief to compensate for the losses incurred and to prevent further unjust enrichment or harm.*

- **Financial loss and damages caused by wrongful conduct.**
- **Negligent or willful misconduct** leading to economic harm.
- **Defamation or reputational harm** By postings on  a  Zillow
- Potential .**Claim for damages** in a separate civil action, seeking compensation for the income and opportunities lost.
- **Request for monetary damages** due to their conduct adversely affecting my ability to earn.
- **Request an injunction** preventing further wrongful postings or actions impacting my reputation and financial prospects.
- *Exhibit #3*

**Ethical ambiguity**concerns about potential misconduct or collusion by my attorney, conflicting interests, incomplete communication, or ambiguous actions that could be perceived as not entirely transparent or acting against my best interests. Allowing false and misleading <u>information.</u>

Exhibit#2

**Obstruction of justice** refers to actions that intentionally interfere with the administration of law or the judicial process.  Behaviors such as fabricating evidence, giving false statements, misusing court procedures,  attempting to influence or improperly manipulate court orders and proceeding.

- **Potential criminal conduct:** If the creditor engaged in **intentional fraud, forgery, perjury, or malicious concealment** to unlawfully seize or encumber my property, these acts could potentially be criminal violations. For example, filing false documents with the intent to defraud can be grounds for criminal charges such as **fraud, perjury, or conspiracy** under state or federal law.
- **Exibit #1**

# Pending alleged Trustee Misconduct and Breach of Trust

**Obstruction of justice** Action that interfere with the administration of law or the judicial process.  Behaviors such as giving false statements, misusing court procedures, or attempting to influence or improperly manipulate court orders and proceedings.

**Requested Relief:**
WHEREFORE, the

Debtor respectfully requests that this Honorable Court:
**Find Bellco Credit Union in contempt** for willfully violating the automatic stay under 11 U.S.C. §

    362(a) and 11 U.S.C. § 362(k);
.

**Imposesanctions and damages** against Belloc, including but not limited to:
- Actual damages incurred due to wrongful actions.
- Punitive damages for willful violation.
- Attorneys' fees and costs related to the enforcement of the automatic stay;

**Enjoin Bellco from further unlawful actions** against the Debtor's property, including any attempt to encumber, seize, or sell the homestead.

·  **OrderBellco**
to disclose all claims against the property fully and accurately and to cease filing conflicting or false claims designed to unlawfully encumber the property.
.

**Suspendfurther proceedings** to allow parties an opportunity to settle or resolve their disputes, including direct negotiations or alternative dispute resolution, if appropriate.

**Grant Such other and further relief** as the Court deems just and proper.

Signature:

Date: 5-13-25





P.O. BOX 6541 • Greenwood Village, CO • 80155

Michelle D. Lee
18590 e 19th ave Suite 200
Aurora, CO  80011                                        10-18-2024

Property Address: 16480 Fairway Dr. Commerce City, CO 80022
Account Number: 606139772                    Borrower(s): Michelle D. Lee

Dear Michelle D. Lee:

Per your request, we are happy to provide you the payoff quote for the loan referenced above.  This payoff quote is valid through the date listed below, provided that no additional transactions are posted to the account.  If you choose to pay off the loan after the Good Through Date, a new payoff statement should be requested.

- Good Through Date: 11-18-2024
- Payoff Amount: $311,753.96
- Daily Interest (per diem):

If the amount you send us is more than what you owe, we will place the difference into your share savings account.  If the amount you send us is not enough to pay the account in full on the date we receive your payment, you will still owe us the difference plus any additional interest that accrues. Bellco reserves the right to refuse any funds which are insufficient to pay the loan in full for any reason (i.e. previously dishonored checks, money order, error in payoff calculation, or any bills to be paid from your escrow account).

To receive same day credit and to avoid additional interest, payoff funds must be remitted in US dollars by official check or wire transfer.  See page (2) for payment instructions.

If you have any questions regarding the payoff statement, please call 800-BELLCO1 (1-800-235-5261).

Thank you for your membership.

Sincerely,
Bellco Credit Union, Real Estate Servicing

The information below details the breakdown of your payoff amount.

| Payoff Amount Breakdown | Due to the Credit Union | Due to Member |
|---|---|---|
| Note Balance | $300,174.46 | |
| Note Interest | $11,303.19 | |
| Recording Fee - Lien Release | $48.00 | |
| Late Charge Balance | $213.31 | |
| Potential Late Charge | $15.00 | |
| | | |
| Total Amount Due | $311,753.96 | Total to Member        $0.00 |

PR3779565
Rev: 9/1/2023



**Payment Instructions**

**For Mailing and Overnight Delivery:**
Bellco Credit Union
Attention: Real Estate Servicing
1501 S. Clinton Street, Suite 1400
Baltimore, MD 21224

**Wiring Instructions:**
Please note that wire transfers will not be applied or credited on Saturdays, Sundays, or holidays. The funds must be received by 3:45pm Eastern Standard Time. Please include the loan number on all checks and wire transfers.

| | |
|---|---|
| Receiving Financial Institution ABA/routing number | 302075018 |
| Receiving Financial Institution Name | Bellco Credit Union |
| Receiving Financial Institution Address | 7600 E. Orchard Road, 400N, Greenwood Village, CO 80111 |
| Beneficiary Account Number | Member's Loan Account Number |
| Beneficiary Name | Member's Name (as it appears on account) |
| Beneficiary Address | Member's Address (as it appears on account) |

Please detach and send with your payment.
------------------------------------------------------------------------------------------------------------------------------------

Michelle D. Lee

Account Number:     606139772
Good Through Date:  11-18-2024
Total Payoff Amount: $311,753.96
Amount Enclosed:     _____

For a Home Equity Line of Credit only, is the intent to (check box):

☐ Payoff and Close the account (lien will be released)
☐ Paydown - line will remain open (lien will be subordinated, if applicable)

**Payoff Address:**
Bellco Credit Union
Attention: Real Estate Servicing
1501 S. Clinton Street, Suite 1400
Baltimore, MD 21224

PR3779565
Rev: 9/1/2023





UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

In re:
MICHELLE DEON LEE,
Debtor

Case No:    24-16918 - KHT

vs.
BELLCO CREDIT UNION and its SUCCESSORS,
ASSIGNS, SERVICERS, TRUSTEES AND
INVESTORS,
Creditor

Chapter    7

MICHELLE DEON LEE and TOM H. CONNOLLY,
Trustee
Respondents

## Motion For Relief From Stay

Comes now, BELLCO CREDIT UNION, hereinafter "Movant," by and through its attorneys, JANEWAY LAW FIRM, P.C., and requests that this Court enter an Order For Relief From Stay pursuant to 11 U.S.C. Section 362(d). As grounds for this Motion, Movant states:

1. Debtor filed a Chapter 13 Bankruptcy petition on November 20, 2024. Bankruptcy case converted to a Chapter 7 on February 28, 2025.

2. Movant seeks to terminate the automatic stay as to Movant.

3. Debtor, MICHELLE D. LEE, signed a Note for the benefit of Movant or Movant's predecessors in interest on the Note. Said Note was in the original amount of $300,000.00. Movant is in possession of or otherwise entitled to enforce said Note.

4. Movant is a secured creditor by virtue of the Deed of Trust signed by Debtor MICHELLE D. LEE, recorded in the County where the property is located on April 19, 2022 at reception number 2022000054885.

5. All rights and remedies under the Deed of Trust have been assigned to Movant pursuant to that certain Assignment of Deed of Trust.

6. Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contacts, judgments, mortgages, loan modifications and security agreements in support of right to seek a lift of the automatic stay and foreclosure if necessary. The copies were provided to counsel by Movant, or obtained from public records.

7. The property (hereinafter "Property") described in the Deed of Trust and the subject of this Motion appears to be the Debtor's principal residence:

LOT 21, REUNION FILING NO. 6, 2ND AMENDMENT, COUNTY OF ADAMS, STATE OF COLORADO.

Purported Common Address: 16480 FAIRWAY DRIVE, COMMERCE CITY, CO 80022

8. The current value of the property is approximately $656,200.00 pursuant to the debtor's schedules.

9. As of April 7, 2025, the unpaid principal balance of the Note is $289,076.22.

10. The current payment amount is $135.33 and includes principal and interest.

11. Debtor is in default pursuant to the terms of the Note and Deed of Trust by failure to make payments as due. As of April 28, 2025 Debtor is currently in default of 13 payments, along with other fees and charges. A payment history is provided. The approximate amount necessary to cure the default that gave rise to this motion is estimated to be:

| | |
|---|---|
| 1 Payment at | $134.96 |
| 1 Payment at | $130.60 |
| 1 Payment at | $134.96 |
| 1 Payment at | $130.61 |
| 1 Payment at | $134.95 |
| 1 Payment at | $134.96 |
| 1 Payment at | $248.15 |
| 1 Payment at | $134.96 |
| 1 Payment at | $130.60 |
| 1 Payment at | $135.28 |
| 1 Payment at | $135.33 |
| 1 Payment at | $122.23 |
| 1 Payment at | $135.33 |
| Late Fees | $183.31 |
| Bankruptcy Attorney Fees & Costs | $1,424.00 |
| Estimated Total | $3,450.23 |

12. An additional payment of $135.33 will come due on May 28, 2025.

13. The loan was not active in foreclosure prior to the bankruptcy petition being filed.

14. To the best knowledge of the undersigned attorney, the Debtor has not recently requested a loan modification.

15. The approximate payoff to Movant of the entire debt owed as of April 7, 2025 is estimated to be:

| | |
|---|---|
| Unpaid Principal Balance | $289,076.22 |
| Interest | $15,655.38 |
| Late Fees | $183.31 |
| (Suspense) | $-0.00 |
| Bankruptcy Attorney Fees & Costs | $1,424.00 |
| Estimated Total | $306,318.91 |

16. Additional liens against the property include:
   a. B&B Investments in the amount of $1,983.00 pursuant to Debtor's Schedules.
   b. Kalamala Capital Group in the amount of $311,700.00 pursuant to Debtor's Schedules

    c.  Mulligan Funding LLC in the amount of $284,692.00 pursuant to Debtor's Schedules.
    d.  Rushmore Servicing in the amount of $528,000.00 pursuant to Debtor's Schedules.
    e.  SN Servicing Corp in the amount of $1,000,000.00 pursuant to Debtor's Schedules.
    f.  US Internal Revenue Service in the amount of $48,977.33 pursuant to Debtor's Schedules.

17.  Movant has grounds for relief from stay pursuant to 11 U.S.C. § 362(d)(2). The property value, for purposes of this motion, should be reduced by the foreclosure costs, subsequent resale costs, and weighted against the increasing debt amount. *See In re Mountain Side Holdings, Inc.*, 142 B.R. 421, 423 *(Bankr.D.Colo.1992) and In re Sulfens*, 275 B.R. 578, *(Bankr.D.Colo2002) and In re Dickinson*, 185 B.R.76 *(Bankr.D.Colo.1992).* The Debtor has no measurable equity in the property. The property is not necessary to an effective reorganization. Debtor's case is a Chapter 7 liquidation, not reorganization.

18.  In addition or in the alternative, Movant has cause for relief from stay pursuant to 362(d)(1). Debtor has failed to make payments, and the increasing debt and the costs of obtaining and liquidating the property, leave Movant without adequate protection. Debtor's default constitutes cause for relief from stay pursuant to 362(d)(1).

19.  As further relief sought by Creditor in this Motion, Creditor requests that this Court's Order granting relief from stay be effective immediately, and not stayed pursuant to F.R.B.P. 4001(a)(3).

If the notice filed herein regarding this motion specifies a hearing date more than 30 days from filing the motion, Movant hereby waives its right to have this matter heard sooner.

WHEREFORE, Movant requests this Court to enter an Order Granting Relief from Stay.

Dated: April 30, 2025
JANEWAY LAW FIRM, P.C.
Attorneys for BELLCO CREDIT UNION

Lynn M. Janeway #15592
David R. Doughty #40042
Alison L. Berry #54531
N. April Winecki #34861
9540 Maroon Circle, Suite 320
Englewood, CO 80112
Phone: (303) 706-9990
Fax: (303) 706-9994
bankruptcy@janewaylaw.com
JLF #: 25-034634

---

In re:
MICHELLE DEON LEE,

Case Number:  24-16918 - KHT
Chapter:  7

AFFIDAVIT REGARDING THE SERVICEMEMBER CIVIL RELIEF ACT

The undersigned checked the DMDC website maintained by the Department of Defense and found no record that the Debtor, or the persons obligated on the Note or Grantor(s) of the Deed of Trust as described in the Motion, are on active duty or entitled to the protections afforded under the Servicemembers Civil Relief Act.

THE UNDERSIGNED AFFIRMS THAT THE FACTS SET FORTH HEREIN ARE TRUE AND CORRECT TO THE BEST OF THEIR KNOWLEDGE, INFORMATION AND BELIEF.

By: Amanda Schroeder, Paralegal
JANEWAY LAW FIRM, P.C.
bankruptcy@janewaylaw.com
File: 25-034634/Lee

Subscribed and affirmed before me in Douglas County, State of Colorado on April 30, 2025

Seal/ Commission expiration date

(Notary's official signature)

LESLI HAIDER
Notary Public
State of Colorado
Notary ID # 20074011116
My Commission Expires 03-16-2027



Electronically Recorded RECEPTION#: 2023B0034085, 4/19/2023 at Case:24-16918-KHT   Doc#87   Filed:04/30/25   Entered:04/30/25 14:27:25   Page27 of 29
Rec: 0 Josh Zygielbaum, Adams County, CO.

---

| Bank: | Bellco Credit Union | | Run Date: | 04-24-2025 |
| Report: | LN_PDUE | | Post Date: | 04-24-2025 |
| | | | Page: | 1 of 2 |

**Loan Bill Payment Due**

Account Number :

** DO NOT MAIL **
MICHELLE D LEE
18590 E 19TH AVE SUITE 200
AURORA  CO  80011

| | | |
|---|---|---|
| Current Due Date : | 04-28-2025 | |
| Amount Past Due : | 1,707.59 | |

| | | |
|---|---|---|
| Major | : Consumer Loan | |
| Minor | : Collateral In Liquidation | |
| Rate Of Interest : | 10.500% | |
| Principal Balance : | 15,175.00 | |

| | |
|---|---|
| Principal Due : | 0.00 |
| Interest Due : | 1,842.92 |
| Escrow Due : | 0.00 |
| Late Charge/Fee Due : | 183.31 |
| Other Charges Due : | 0.00 |
| Total Amount Due : | 2,026.23 |

----------Payment(s) Due

| Due Date | Balance Category | Amount |
|---|---|---|
| 12-28-2023 | Late Charge Balance | 15.00 |
| | Sub Total | 15.00 |
| 02-28-2024 | Late Charge Balance | 15.00 |
| | Sub Total | 15.00 |
| 03-28-2024 | Late Charge Balance | 15.00 |
| | Sub Total | 15.00 |
| 04-28-2024 | Late Charge Balance | 6.75 |
| | Note Interest | 134.96 |
| | Sub Total | 141.71 |
| 05-28-2024 | Late Charge Balance | 6.53 |
| | Note Interest | 130.60 |
| | Sub Total | 137.13 |
| 06-28-2024 | Late Charge Balance | 6.75 |
| | Note Interest | 134.96 |
| | Sub Total | 141.71 |
| 07-28-2024 | Late Charge Balance | 6.53 |
| | Note Interest | 130.61 |
| | Sub Total | 137.14 |
| 08-28-2024 | Late Charge Balance | 6.75 |
| | Note Interest | 134.95 |
| | Sub Total | 141.70 |
| 09-28-2024 | Late Charge Balance | 15.00 |
| | Note Interest | 134.96 |
| | Sub Total | 149.96 |
| 10-28-2024 | Late Charge Balance | 15.00 |
| | Note Interest | 248.15 |
| | Sub Total | 263.15 |

Case:24-16918-KHT   Doc#87   Filed:04/30/25   Entered:04/30/25 14:27:25   Page28 of 29

Electronically Recorded RECEPTION#: 2023J04834985,
4/19/2022 1:Caser24:46918-KHT  Doc#:87  Filed:04/30/25  Entered:04/30/25 14:27:25  Page25 of 29
TD Pgs: # Josh Zygielbaum, Adams County, CO.

Loan No.:
Borrower:  MICHAEL D. LEE                                   Dain ID:

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 14th day of April, 2022, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed ("Security Instrument") of the same date, given by the undersigned ("Borrower") to secure Borrower's Home Equity Line of Credit Agreement and Disclosure Statement ("HELOC") entered into with BELLCO CREDIT UNION ("Lender") of the same date and covering the Property described in the Security Instrument and located at:

16480 FAIRWAY DRIVE
COMMERCE CITY, CO 80022
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in

DECLARATIONS, BYLAWS AND COVENANTS
REUNION

("Declaration"). The Property is a part of a planned unit development known as

[Name of Planned Unit Development]

("PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD ("Owners Association") and the uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. PUD Obligations. Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument, or any equivalent document that creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

B. Property Insurance. So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property that is satisfactory to Lender and that provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the HELOC.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

---

Electronically Recorded RECEPTION#: 2023J04834985,
4/19/2022 1:Caser24:46918-KHT  Doc#:87  Filed:04/30/25  Entered:04/30/25 14:27:25  Page26 of 29
TD Pgs: # Josh Zygielbaum, Adams County, CO.

Loan No.:                                                           Dain ID:

C. Public Liability Insurance. Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

D. Condemnation. The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, hereby are assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 6.

E. Lender's Prior Consent. Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action that would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

F. Remedies. If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the HELOC rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

*I need Clarification on This Document*

Purported Common Address: 16480 FAIRWAY DRIVE, COMMERCE CITY, CO 80022

8.     The current value of the property is approximately $636,200.00 pursuant to the debtor's schedules.

9.     As of April 7, 2025, the unpaid principal balance of the Note is $289,076.22.

10.    The current payment amount is $135.33 and includes principal and interest.

11.    Debtor is in default pursuant to the terms of the Note and Deed of Trust by failure to make payments as due. As of April 28, 2025 Debtor is currently in default of 13 payments, along with other fees and charges. A payment history is provided. The approximate amount necessary to cure the default that gave rise to this motion is estimated to be:

| 1 Payment at $134.96 | $134.96 |
|---|---|
| 1 Payment at $130.60 | $130.60 |
| 1 Payment at $134.96 | $134.96 |
| 1 Payment at $130.61 | $130.61 |
| 1 Payment at $134.95 | $134.95 |
| 1 Payment at $134.96 | $134.96 |
| 1 Payment at $248.15 | $248.15 |
| 1 Payment at $134.96 | $134.96 |
| 1 Payment at $130.60 | $130.60 |
| 1 Payment at $135.28 | $135.28 |
| 1 Payment at $135.33 | $135.33 |
| 1 Payment at $122.23 | $122.23 |
| 1 Payment at $135.33 | $135.33 |
| Late Fees | $183.31 |
| Bankruptcy Attorney Fees & Costs | $1,424.00 |
| Estimated Total | $3,450.23 |

12.    An additional payment of $135.33 will come due on May 28, 2025.

13.    The loan was not active in foreclosure prior to the bankruptcy petition being filed.

14.    To the best knowledge of the undersigned attorney, the Debtor has not recently requested a loan modification.

15.    The approximate payoff to Movant of the entire debt owed as of April 7, 2025 is estimated to be:

| Unpaid Principal Balance | $289,076.22 |
|---|---|
| Interest | $15,635.38 |
| Late Fees | $183.31 |
| (Suspense) | $-0.00 |
| Bankruptcy Attorney Fees & Costs | $1,424.00 |
| Estimated Total | $306,318.91 |

16.    Additional liens against the property include:
    a.  B&B Investments in the amount of $1,983.00 pursuant to Debtor's Schedules.
    b.  Kalamata Capital Group in the amount of $311,700.00 pursuant to Debtor's Schedules.

Bank:    Bellco Credit Union
Report:  LN_PDUE

```
** DO NOT MAIL **
MICHELLE D LEE
18590 E 19TH AVE SUITE 200
AURORA  CO  80011
```

| Major            | : Consumer Loan            |
|------------------|----------------------------|
| Minor            | : Collateral In Liquidation |
| Rate Of Interest | : 10.500%                  |
| Principal Balance| : 15,175.00                |

Loan Bill Payment Due

| Due Date   | Payment(s) Due Balance Category | Amount |
|------------|--------------------------------|--------|
| 12-28-2023 | Late Charge Balance            | 15.00  |
|            | Sub Total                      | 15.00  |
| 12-28-2024 | Late Charge Balance            | 15.00  |
|            | Sub Total                      | 15.00  |
| 11-28-2024 | Late Charge Balance            | 15.00  |
|            | Sub Total                      | 15.00  |
| 10-28-2024 | Late Charge Balance            | 6.75   |
|            | Note Interest                  | 134.96 |
|            | Sub Total                      | 141.71 |
| 09-28-2024 | Late Charge Balance            | 6.53   |
|            | Note Interest                  | 130.60 |
|            | Sub Total                      | 137.13 |
| 08-28-2024 | Late Charge Balance            | 6.75   |
|            | Note Interest                  | 134.96 |
|            | Sub Total                      | 141.71 |
| 07-28-2024 | Late Charge Balance            | 6.53   |
|            | Note Interest                  | 130.61 |
|            | Sub Total                      | 137.14 |
| 06-28-2024 | Late Charge Balance            | 6.75   |
|            | Note Interest                  | 134.95 |
|            | Sub Total                      | 141.70 |
| 05-28-2024 | Late Charge Balance            | 15.00  |
|            | Note Interest                  | 134.96 |
|            | Sub Total                      | 149.96 |
| 04-28-2024 | Late Charge Balance            | 15.00  |
|            | Note Interest                  | 248.15 |
|            | Sub Total                      | 263.15 |

Run Date:  04-24-2025
Post Date: 04-24-2025
Page:      1 of 2

| Account Number :        |           |
|-------------------------|-----------|
| Current Due Date :      | 04-28-2025 |
| Amount Past Due :       | 1,707.59  |
| Principal Due :         | 0.00      |
| Interest Due :          | 1,842.92  |
| Escrow Due :            | 0.00      |
| Late Charge/Fee Due :   | 183.31    |
| Other Charges Due :     | 0.00      |
| Total Amount Due :      | 2,026.23  |

Bank:    Bellco Credit Union
Report:  LN_PDUE

Run Date: 04-24-2025
Post Date: 04-24-2025
Page:     2 of 2

## Loan Bill Payment Due

** DO NOT MAIL **
MICHELLE D LEE
18590 E 19TH AVE SUITE 200
AURORA  CO  80011

Major            : Consumer Loan
Minor            :
Rate Of Interest : Collateral In Liquidation
Principal Balance : 10.500%
                    15,175.00

Account Number :

Current Due Date : 04-28-2025
Amount Past Due :    1,707.59

Principal Due       :        0.00
Interest Due        :    1,842.92
Escrow Due          :        0.00
Late Charge/Fee Due :      183.31
Other Charges Due   :        0.00
Total Amount Due    :    2,026.23

### --------Payment(s) Due

| Due Date | Balance Category | Amount |
|---|---|---|
| 1-28-2024 | Late Charge Balance | 15.00 |
| | Note Interest | 134.96 |
| | Sub Total | 149.96 |
| 2-28-2024 | Late Charge Balance | 15.00 |
| | Note Interest | 130.60 |
| | Sub Total | 145.60 |
| 1-28-2025 | Late Charge Balance | 15.00 |
| | Note Interest | 135.28 |
| | Sub Total | 150.28 |
| 12-28-2024 | Late Charge Balance | 15.00 |
| | Note Interest | 135.33 |
| | Sub Total | 150.33 |
| 3-28-2025 | Late Charge Balance | 15.00 |
| | Note Interest | 122.23 |
| | Sub Total | 137.23 |
| 4-28-2025 | Note Interest | 135.33 |
| | Sub Total | 135.33 |
| Total | | 2,026.23 |



**Loan Bill Payment Due**

Account Number : ▮▮▮▮▮

```
** DO NOT MAIL **                               Current Due Date :   04-28-2025
MICHELLE D LEE                                  Amount Past Due :     1,707.59
18590 E 19TH AVE SUITE 200
AURORA  CO  80011                               Principal Due :            0.00
                                                Interest Due :         1,842.92
                                                Escrow Due :               0.00
Major          : Consumer Loan                  Late Charge/Fee Due :    183.31
Minor          : Collateral In Liquidation      Other Charges Due :        0.00
Rate Of Interest :    10.500%                   Total Amount Due :     2,026.23
Principal Balance :    15,175.00
```

```
----------Payment(s) Due
Due Date            Balance Category              Amount
11-28-2024          Late Charge Balance            15.00
                    Note Interest                 134.96
                    Sub Total                     149.96
12-28-2024          Late Charge Balance            15.00
                    Note Interest                 130.60
                    Sub Total                     145.60
01-28-2025          Late Charge Balance            15.00
                    Note Interest                 135.28
                    Sub Total                     150.28
02-28-2025          Late Charge Balance            15.00
                    Note Interest                 135.33
                    Sub Total                     150.33
03-28-2025          Late Charge Balance            15.00
                    Note Interest                 122.23
                    Sub Total                     137.23
04-28-2025          Note Interest                 135.33
                    Sub Total                     135.33

                    Total                       2,026.23
```



Electronically Recorded RECEPTION#: 2021000834005,
4/19/2021 Case:24-16918-KHT   Doc#:87   Filed:04/30/25   Entered:04/30/25 14:27:25   Page17 of 29
TD Pgs: 0 Jash Zygielbaum, Adams County, CO.

Loan No:
Borrower: MICHELLE D LEE

After Recording Return To:
5 SHARED SERVICE SOLUTIONS PROCESSING CTR
ATTENTION: HOME EQUITY PROCESSING
971 CORPORATE BLVD
LINTHICUM, MD 21090

(Space Above This Line For Recording Data)

# DEED OF TRUST

## DEFINITIONS

(1) "Security Instrument" means this document, which is dated April 14, 2021, together with all riders to this document.

(A) "Borrower" is MICHELLE D LEE. Borrower is the trustor under this Security Instrument.

(C) "Lender" is BELLCO CREDIT UNION. Lender is, A STATE CHARTERED CREDIT UNION organized and existing under the laws of the State of COLORADO. Lender's address is 7600 E ORCHARD ROAD, SUITE 400N GREENWOOD CO 80111. Lender is the beneficiary under this Security Instrument.

(B) "Trustee" is THE PUBLIC TRUSTEE OF ADAMS COUNTY, Colorado

(D) "Secured Indebtedness" means:

(1) The debt, interest, finance charges, and other fees and charges incurred under the terms of the Home Equity Line of Credit Agreement and Disclosure Statement ("HELOC") dated April 14, 2021; the HELOC matures on April 14, 2046.

(2) Any advances made to protect the security of this Security Instrument, to the extent permitted by law or this Security Instrument.

(E) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(F) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower: (check box as applicable)

☐ Condominium Rider                 ☐ Other(s) [specify]
☐ 1-4 Family Rider                  ☐ Planned Unit Development Rider

COLORADO HELOC Deed of Trust
© 2021 xxxxx xxxx                          1504    (Page 1 of 4 Pages)

---

Electronically Recorded RECEPTION#: 2021000834005,
4/19/2021 Case:24-16918-KHT   Doc#:87   Filed:04/30/25   Entered:04/30/25 14:27:25   Page18 of 29
TD Pgs: 0 Jash Zygielbaum, Adams County, CO.

Loan No:

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Secured Indebtedness, and all renewals, extensions, and modifications of the Secured Indebtedness; (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the HELOC. For this purpose, Borrower, in consideration of the debt and the trust herein created, irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY of ADAMS:

LOT 2, REUNION FILING NO 4, 2ND AMENDMENT, COUNTY OF ADAMS, STATE OF COLORADO.

which currently has the address of 16460 FAIRWAY DRIVE,
                                    (Street)

COMMERCE CITY, COLORADO,          80022          (Property "Address")
                                 (Zip Code)

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS and Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record and to the maximum principal amount secured by this Security Instrument.

## ADVANCES

Any advances made under the HELOC may be made, repaid, and remade from time to time, subject to the limitations of the HELOC. Regardless of whether the Secured Indebtedness is reduced to a zero balance, this Security Instrument shall remain in effect until released or reconveyed.

Any advances made in excess of the Credit Limit shall not be secured by this Security Instrument if prohibited by Applicable Law or, if not prohibited by Applicable Law, unless (i) Lender agrees to increase the Credit Limit and complies with any subsequent disclosure, rescission, and other requirements under Applicable Law and (ii) Borrower agrees to execute any documents Lender requires to evidence and secure the increase in the Credit Limit.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

COLORADO HELOC Deed of Trust                     1504    (Page 2 of 4 Pages)



Loan No. [redacted] Data ID: [redacted]

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Secured Indebtedness; Performance of Obligations.** Borrower shall pay when due the Secured Indebtedness and shall perform all of Borrower's obligations under the HELOC and this Security Instrument.

**2. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property that can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and the dues, fees, and assessments of a condominium association, homeowners association, or similar organization, if any.

Borrower shall make all payments and comply with all covenants as and when required by any mortgage, deed of trust, security agreement, or other lien document evidencing a lien that is prior to this Security Instrument and that is approved by Lender. Borrower shall not modify, extend, or increase the amount secured by such prior lien document without Lender's written consent.

Upon demand Borrower shall furnish to Lender satisfactory evidence of payment of such taxes, assessments, charges, fines, impositions, and prior liens.

Borrower shall promptly discharge any lien not approved by Lender that has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings that in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien that can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 2.

**3. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against fire, hazards included within the term "extended coverage," flood, and any other hazards including without limitation earthquakes, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences may change during the term of the HELOC. Borrower may obtain such insurance from the insurance carrier of Borrower's choice, subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard, or liability, and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 3 shall be Secured Indebtedness and shall be payable according to the terms of the HELOC.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the Secured Indebtedness, whether or not then due, with the excess, if any, paid to Borrower.

[redacted]

Loan No: [redacted] Data ID: [redacted]

**4. Preservation, Maintenance, and Protection of the Property; Occupancy and Use of the Property; and Inspection.** Borrower shall not destroy, damage, or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value, due to its condition, such as would adversely affect Lender's security in the Property. Unless it is determined pursuant to Section 3 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower shall not be relieved of Borrower's obligation for the completion of such repair or restoration.

Borrower shall not materially change the present occupancy and use of the Property without Lender's written consent. Borrower shall not use the Property in an illegal manner or for any illegal use such as would subject the Property to seizure.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**5. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien that may attain priority over this Security Instrument, or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions may include, but are not limited to: (a) paying any sums secured by a lien that has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees, to the extent not prohibited by Applicable Law, to protect its interest in the Property and/or rights under this Security Instrument, including Lender's secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 5, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 5.

Any amounts disbursed by Lender under this Section 5 shall be Secured Indebtedness and shall be payable according to the terms of the HELOC.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing. If the Property is located in a condominium project or a planned unit development, Borrower shall perform all of Borrower's obligations under the covenants, by-laws, or regulations of the condominium project or planned unit development.

**6. Condemnation.** Borrower shall give Lender prompt notice of any condemnation or eminent domain proceeding or action pending or threatened against the Property and authorizes Lender to intervene in Borrower's name in any such proceeding or action. Borrower assigns to Lender any money awarded to Borrower pursuant to such proceeding or action, and such money shall be applied to the Secured Indebtedness, whether or not then due, with the excess, if any, paid to Borrower.

**7. Loan Charges.** If the HELOC is subject to a law that sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the HELOC exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower that exceeded permitted limits shall be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the HELOC or by making a direct payment to Borrower. If a refund reduces principal, the reduction shall be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the HELOC). Borrower's acceptance of any such refund made by direct payment to Borrower shall constitute a waiver of any right of action Borrower might have arising out of such overcharge.

[redacted]

← (J) John Bankruptcy Law 📞 ⋮

Thursday • 1:42 PM

**Please call me confirm receipt of all emails**

Thursday • 2:48 PM

Got them. I left messages for Connelly and Berry. I'll respond after speaking with them

Yesterday • 1:16 AM

↓

⊕ RCS mes... 😊 🖼 〰



*Exhibit #2*

*Communication Between Berry : M/y attorney*







⟨ Back to search    **Zillow**    ♡ Save    ⬆ Share    ⊘ Hide    ⊙⊙⊙ More

Pre-foreclosure

See all 70 photos

Pre-foreclosure/Auction

# Est. $1,088,400

16480 Fairway Dr, Commerce City, CO 80022

| **5** beds | **6** baths | **5,643** sqft |

SingleFamily    Built in 2014    0.32 Acres Lot

$1,088,400 Zestimate®    $193/sqft    $25/mo HOA

*My Homestead* (handwritten)

## Overview

This 5643 square foot single family home has 5 bedrooms and 6.0 bathrooms. This home is located at 16480 Fairway Dr, Commerce City, CO 80022.

**186 days** on Zillow    |    **33** views    |    **1** save